## 42967. ALLEN v. THE STATE.
(340 SE2d 187)

GREGORY, Justice.

Curtis Allen, Jr., was convicted of the murder of his mother and grandmother and theft by taking of a motor vehicle.[1] He was sen-

---

[1] Allen was arrested on December 20, 1983. He was indicted on January 4, 1984. A jury convicted Allen on August 11, 1984, and he was sentenced on August 22, 1984. A motion for new trial was filed on August 29, 1984, and denied on August 28, 1985. Notice of Appeal was filed on September 25, 1985. The transcript was certified on November 20, 1985, and the case was docketed in this court on November 27, 1985. The case was submitted for decision on January 20, 1986.

tenced to two consecutive terms of life imprisonment for the murders and 20 years for theft. We affirm the conviction.

As a 15-year-old, Allen was living with his mother, Linda Allen, and his grandmother, Louise Norris, in Waycross. The evidence indicated the two women on occasion physically abused and mentally harassed Allen. The teenager was receiving psychological treatment for severe emotional and behavioral problems.

On the afternoon of December 11, 1983, Allen met with his girl friend, Waunelle Bennett, and Walter Allen Golden, Jr. The three discussed running away from their homes. Allen and Waunelle had run off together before. Allen told Waunelle he would call her later and that he and Golden were going to his house to listen to music.

After arriving at the Allen home, Allen and Golden went to Allen's room. During the afternoon, Allen consumed some Valium and some alcohol. At about 6 p.m., Allen began discussing with Golden a plan to kill his mother and grandmother. After some thirty minutes, during which Allen became increasingly agitated, he got his grandmother's .410 gauge shotgun. He shot his mother once in the head and then shot his grandmother twice. Allen took $17 from his grandmother's purse and left with Golden in his grandmother's car. They picked up Waunelle and headed west. In nearby Pearson, the group stopped and Golden left the car. He told Allen he wanted to speak to a sister living in town, but did not return. Allen and Waunelle went on to Americus, where they spent nine days with Allen's uncle.

Waunelle later decided she wanted to return to Waycross. As the couple was driving through Pearson on the way home, the grandmother's car caught on fire. Emergency crews and police responded to the fire. Police discovered a charred .410 gauge shotgun on the rear floorboard. Police also called Waunelle's father, Carroll Bennett, to take the couple back to Waycross. Allen later admitted to Bennett that he had killed his mother and grandmother, and Bennett called the police. The police discovered the bodies on December 20.

In investigating the murder, State Crime Laboratory experts determined the burned .410 gauge shotgun found in Pearson matched up with spent shells found in the kitchen of the Allen home and with wadding found in the living room.

Both Allen and Golden made statements to police. Allen admitted shooting the victims. Allen said he devised a plan by which Golden would hold a pistol on his grandmother while he reloaded after shooting his mother. Golden was to go in the kitchen before Allen started shooting, he said, and cough before coming out. Allen said Golden went in the kitchen and coughed, but did not come out. Golden told police Allen had shot the victims and solicited his help. Golden said he went into the kitchen, but did not come out.

The district attorney's office decided to waive the death penalty

and try Allen and Golden together. Allen's attorney made a pre-trial motion to sever the trial. The trial court denied the motion.

During the trial, both Allen and Golden took the stand. Allen again admitted shooting his mother and grandmother. He testified he killed them because he did not like the way they treated him. Allen said they constantly abused and argued with him. Allen again said Golden went to the kitchen before the shooting, but refused to help him. When Golden took the stand, he testified again that he had refused to help and stayed in the kitchen during the killings.

The prosecution showed that Allen had also admitted his role in the killings to a Mike Rowland, Carroll and Waunelle Bennett and Allen's brother, Gregg. Also, Golden told his sister that Allen had killed his mother and grandmother.

Although the trial judge refused to sever the trial, he instructed the jury during the trial and in the charge that each defendant's statements should be used only as evidence against that individual, and not his co-defendant. The trial court also had the statements edited so that no specific references would be made to a co-defendant. The judge told police to insert the phrases "another white male," "he," and "him" in the statements in the place of a co-defendant's name.

Allen was convicted of both murders and the theft of the grandmother's automobile. Golden was acquitted of two counts of murder but found guilty of theft by taking of a motor vehicle.

1. The prosecution waived the death penalty and Allen and Golden were tried together pursuant to OCGA § 17-8-4. Allen now contends the trial court erred in denying his motion to sever the trials. He claims the admission of Golden's pre-trial statements implicating Allen was prejudicial and violated the holding in *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Allen argues there was a clear danger that evidence admissible against one defendant would be considered against the other despite an admonitory precaution of the court. See *Jones v. State*, 253 Ga. 640, 641-42 (322 SE2d 877) (1984).

In *Bruton*, defendant Bruton was tried jointly with co-defendant Evans. Bruton had maintained his innocence from the beginning, but Evans confessed to police before the trial. The trial court admitted into evidence Evans' confession, which implicated Bruton, even though Evans did not take the witness stand and thus was not subject to cross-examination. The United States Supreme Court reversed the conviction and held the admission of a co-defendant's confession implicating another defendant at a joint trial constitutes a denial of the right of confrontation and is prejudicial error even though the trial court gives instructions that the confession can only be used against the co-defendant and must be disregarded with respect to the defend-

ant. *Bruton,* supra at 137. See also *Reeves v. State,* 237 Ga. 1 (226 SE2d 567) (1976).

The circumstances at Allen's trial can be distinguished from those found in *Bruton* in two regards. First, Allen's co-defendant did take the witness stand and reiterated the facts given in his pre-trial statement. Thus, Allen's counsel had the opportunity to confront co-defendant Golden. "It was clear in *Bruton* that the 'confrontation' guaranteed by the Sixth and Fourteenth Amendments is confrontation *at trial* — that is, that the absence of the defendant at the time the codefendant allegedly made the out-of-court statement is immaterial, so long as the declarant can be cross-examined on the witness stand at trial." *Nelson v. O'Neil,* 402 U. S. 622, 626 (91 SC 1723, 29 LE2d 222) (1971). "The Constitution as construed in *Bruton,* in other words, is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination." *Nelson* at 627.[2]

Secondly, Allen himself admitted killing his mother and grandmother, both in a pre-trial statement and at trial. His version of events was basically consistent with the statements of Golden. In *Parker v. Randolph,* 442 U. S. 62 (99 SC 2132, 60 LE2d 713) (1979), the Court considered the issue of whether *Bruton* required reversal of a defendant's conviction when the defendant himself had confessed and his confession interlocked with and supported the confession of his co-defendant. The Court found a co-defendant's interlocking confession, that is one that relates a consistent chain of events, can be admitted against a defendant who has also confessed when accompanied by limiting instructions. The "motivation to shift the blame to others" recognized in *Bruton* is not as great a danger "when the incriminated defendant has corroborated his codefendant's statements by heaping blame onto himself." *Parker,* supra at 73. See also *Jones v. State,* 245 Ga. 592 (3) (266 SE2d 201) (1980).

In making his motion for severance, Allen had the burden to make a clear showing of prejudice and consequent denial of due process. See *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856) (1975). The grant or denial of a motion to sever is left in the discretion of the trial court, and its ruling will only be reversed for an abuse of discretion. *Baker v. State,* 238 Ga. 389, 391 (233 SE2d 347) (1977). We find no abuse of discretion by the trial court in denying Allen's motion for severance.

2. We have reviewed all the evidence in light of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and find in the

---

[2] This is the same basic concept underlying our rationale in dealing with the hearsay rule in *Gibbons v. State,* 248 Ga. 858 (286 SE2d 717) (1982) and *Cuzzort v. State,* 254 Ga. 745 (334 SE2d 661) (1985).

light most favorable to the jury's verdict that a rational trier of fact could have found Allen guilty beyond a reasonable doubt.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 11, 1986.

*Susan C. Janowski,* for appellant.

*Harry D. Dixon, Jr.,* District Attorney, *Michael J. Bowers,* Attorney General, *Dennis R. Dunn,* Staff Assistant Attorney General, for appellee.