## 75956. PALMER v. THE STATE.
### (369 SE2d 38)

BIRDSONG, Chief Judge.

Appellant was convicted of theft of more than $500 from the Barrow County Probate Court between the period of April 1, 1985, and April 28, 1986. She appeals her conviction asserting six errors.

The probate court books were subjected to a general audit periodically. During this audit, the amount of money deposited in the bank by the office was balanced against the amount of money taken

in by the office as documented in the office's cash receipt journal. Random checks were made of other files in the probate court to be sure that the amount of money associated with actual tickets received had been duly recorded in the cash receipt journal. The general audits revealed no discrepancies.

In April 1986, Judge Cape noticed that the ticket files appeared to contain a large number of tickets compared to the number of entries for the month contained in the cash receipt journal. Judge Cape made a cursory comparison between the amount of fines that should have been collected (based on the number of tickets actually received) and the amount of cash that should have been available for deposit in the bank (based on the receipts issued from and entries recorded in the cash receipt journal). The result of this comparison revealed a suspected $800 shortage. Judge Cape suspended the appellant from office duties. The day she was suspended, the appellant made two large cash deposits in the bank which reduced the shortage level to $92. The following Monday an envelope, which had not been in the cash drawer before, was found which contained the missing $92.

Subsequent investigative audit resulted in the detection of cash shortages in the total amount of $16,201.50. This audit also revealed that while the shortages had occurred over a period of approximately one year, at all times the case receipt journal and the bank deposits balanced, so that the shortages were only detected when the actual tickets and bond forfeitures received were examined and the actual amount of money due from these sources was calculated. Thus, the certified public accountant concluded that a person could not commit this particular type of taking merely by grabbing handfuls of money indiscriminately from the cash drawer. Rather, it can be inferred, that the person taking the money must have had access to the cash receipt journal and known exactly how much money had not been duly receipted therein, otherwise the amount of money deposited from and contained in the cash drawer would not have balanced with the amount recorded in the cash receipt journal. The audit further determined that during the period in question certain checks had been deposited in the bank but the transaction had not been recorded in the cash receipt journal. As the cash deposits still balanced with the cash receipt book, it can be inferred that an amount of cash equal to the amount of unreceipted checks had been removed from the cash drawer. Handwriting analysis revealed that of the over 270 unreceipted tickets processed during the period in question, all but one had been processed by appellant. Judge Cape had processed one unreceipted ticket. Only the appellant and Judge Cape were working in the probate court office throughout the entire time period during which shortages of funds were occurring. Two other women performed clerical duties in the office, but neither of them was employed

the entire time that losses occurred. The last unreceipted ticket was found on April 22, 1986, the appellant departed the office between 11:00 a.m. and noon that day, after being advised of a pending disciplinary action due to a minor matter unrelated to the missing funds. It was shortly thereafter that the loss initially was discovered.

The appellant denied committing the theft, and asserted that she was merely an innocent victim who had processed tickets received by someone else in the office without checking to see if the transaction had been duly recorded in the cash receipt journal. Appellant testified that Judge Cape would cash her personal checks from the cash drawer, and that sometimes her checks would be held for a prolonged period of time. The jury, however, found the appellant guilty as charged. *Held*:

1. Appellant's first three enumerations of error are that: the court erred in accepting a verdict that is contrary to law, is contrary to the evidence, and is strongly against the weight of the evidence. These assignments of error are without merit.

Appellant asserts, in part, that the State's evidence was circumstantial and failed to meet the statutory requirements of OCGA § 24-4-6. Appellant further asserts that "[t]here was no tangible evidence of the guilt of the accused, only circumstantial evidence which was purposefully slanted against the appellant."

To support appellant's conviction, the "[c]ircumstantial evidence must exclude only reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt." *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662). Viewing the evidence in the case at bar in a light most favorable to the verdict, we conclude that the jury could have found that it excluded every reasonable hypothesis except that of the appellant's guilt. Moreover, our review of the transcript "reveals ample evidence from which any rational trier of fact could conclude beyond a reasonable doubt that appellant was guilty of [the offense] charged." *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Appellant's fourth enumerated error is that the trial court erred in its admission, over timely objection, of inflammatory and prejudicial evidence.

Appellant asserts that the court "allowed into evidence matters which bore no relationship" to the appellant's guilt, and allowed the appellee to present "grossly enlarged charts and diagrams selected from part of the evidence . . . with contrived and partial data made by the appellee to be placed on the charts and diagrams, and the conclusions . . . in *red* to bias the jury." However, appellant in his brief fails to identify adequately which charts were "grossly enlarged," which data thereon was contrived and partial, which specific matters bore no relationship to appellant's guilt, and which specific charts and

which specific portions thereof were printed in red. We find that Rule 15 (c) (3), as to specific reference to support enumerated errors, has been violated. Accordingly, this portion of appellant's fourth enumeration of error is deemed to be waived and those assertions of error abandoned. See *Winget v. State*, 138 Ga. App. 433 (11) (226 SE2d 608); see also *Smith v. State*, 202 Ga. 851 (12) (45 SE2d 267) (no cause for reversal shown where "no attempt is made to describe or show the contents of the photographs in order that it might be determined whether they were . . . prejudicial and hurtful to the defendant"), citing *Clare v. Drexler*, 152 Ga. 420 (8) (110 SE 176). However, to comply with the spirit of OCGA § 5-6-48, and to insure that no fundamental unfairness has resulted, which would deprive this appellant of her right to fair trial (cf. *Haywood v. Wooden Peg*, 174 Ga. App. 806, 807 (331 SE2d 109)), we have *sua sponte* examined each chart and diagram, which was introduced in evidence and contained in the trial record before us. We find that none of these exhibits is inflammatory on its face, and that each admitted chart merely was cumulative of other admissible evidence of record. Further, each admitted chart and diagram does not lack relevancy on its face and thus in the trial judge's discretion could be admitted "for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case." *Smith v. State*, supra at 866. We also note that the trial judge was most selective in determining which exhibits could accompany the jury into the jury room. Most charts and diagrams were not allowed to accompany the jury. We find the trial judge's ruling entirely compatible with the use of such exhibits solely for the legitimate purpose above discussed.

In this same broad assertion of error, appellant argues that prejudicial error occurred when, over timely defense objection, the State was allowed to provide the jury with "blazen orange markers to highlight the work product" of the certified public accountant. The accountant's "work product" apparently had been reproduced onto copies of summaries that had been distributed to the jurors. The record discloses that at trial appellant made a specific objection, which was overruled, to the use of the highlighters on the grounds that the color of the highlighters was improper because "[i]t tends to inflame the jury." This objection was overruled. The trial judge has inherent power to supervise the course of the trial (*Johnson v. State*, 254 Ga. 591 (11) (331 SE2d 578)), and to prescribe the manner in which court business will be conducted. *Jackson v. State*, 154 Ga. App. 367 (2) 268 SE2d 418); OCGA §§ 15-6-9 (8); 15-1-3 (4). The appellant has failed to establish that the trial judge abused his discretion in allowing the jurors to use colored highlighters.

We find appellant's fourth enumerated error to be without merit.

3. Appellant's fifth enumerated error is that the trial court erred

in not allowing appellant's sole defense. Appellant appears to have asserted two specific errors in support of this one assignment of error.

First, the appellant alleges without further discussion that the trial court erred in refusing to admit the bank statements and tax returns of the *appellant* and her husband, as they related to the defense that she did not take the money by establishing that her lifestyle had not changed during the period when the thefts of funds were occurring at the probate court. While the appellant may have meant only to address the court's refusal to admit certain financial documents pertaining to Judge Cape and her husband in this particular enumerated error, we find the above issue also worthy of discussion.

In *Walker v. State*, 156 Ga. App. 842 (1) (b) (275 SE2d 755), cited by appellant at trial, this court held that in embezzlement cases, "it has been held permissible to prove acts of extravagance on the part of the accused, the amount and sources of his income, the amount reasonably necessary to maintain himself and family in the manner in which they were maintained during the period in controversy . . . and other like matters, not only on the question of intent, but also to show his bent of mind for the commission of the particular offense charged. . . ." Thus, the appellant argues, she should be able to show no change in lifestyle in her defense.

In refusing to admit evidence of certain financial records of appellant and other evidence not here in issue, the trial judge apparently concluded that the evidence was not relevant, at least partially on the ground that it was self-serving and that the State had offered no evidence to show that appellant's lifestyle had changed. In *Harris v. State*, 183 Ga. App. 219 (2) (358 SE2d 634), we held that " 'evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant. (Cit.) Even where the evidence is of questionable relevancy or competency, it is the rule in this state that it should be admitted, leaving its weight for the determination of the jury.' " We believe that the evidence of an unchanging lifestyle, at a minimum, would constitute evidence tending to throw light upon appellant's intent, motive and bent of mind. Further, we are not satisfied that relevant evidence in the form of documentary evidence can be excluded merely because it is labeled as self-serving. If such were the case, a criminal defendant would be prevented from introducing any meaningful relevant evidence in his own behalf, as he would be virtually limited to the presentation of neutral or adverse information.

Any error resulting from the trial judge's failure to admit this particular lifestyle evidence, however, will not result in reversal of judgment unless prejudice is shown. *Riceman v. State*, 166 Ga. App.

825, 828 (305 SE2d 595). In this case, the appellant introduced substantial amounts of evidence in the record regarding her unchanging lifestyle. The appellant's husband testified regarding his Civil Service pension; that he owned three motor vehicles, the newest being a 1979 van; that there has been no major changes in his home since at least April of 1985; that he pays the bills; that the appellant has no "responsibilities" for which she must spend her salary; that appellant has no bank account because she apparently does not need one; that appellant's lifestyle has not changed in the last year and a half to two years regarding expenditures; and, that he has seen no signs of appellant having $16,000 in her possession. The appellant testified that she did not take the money; that she and her husband pay $100 a month for house rent; that she did not have or need a bank account; and, that she took home about $600 per month from her job at the probate court. Appellant also testified that she had bought no new furniture, refrigerator, stove or couch. Although a delayed objection to this latter testimony was sustained, the trial judge did not order it to be stricken from the record. Thus, we are satisfied that the trial judge did not prevent or exclude evidence of appellant's unchanging lifestyle, rather the court curtailed and limited the amount and type of information that it would allow to be presented to the jury. Compare these facts to the facts in *Wright v. State* 169 Ga. App. 181 (3) (312 SE2d 181).

Assuming without deciding that the trial judge abused his discretion in failing to admit certain evidence of appellant's unchanging lifestyle and that such error raises a due process issue, we find any such error harmless beyond a reasonable doubt in light of the overwhelming evidence of appellant's guilt. See *Smith v. State*, 182 Ga. App. 623 (1) (356 SE2d 702); *LaRue v. State*, 137 Ga. App. 762 (2) (224 SE2d 837).

Secondly, appellant asserts, citing *Henderson v. State*, 255 Ga. 687 (341 SE2d 439), that the trial court erred in refusing to allow certain financial information pertaining to Judge Cape and her husband to be given to the jury for their consideration during deliberation. The excluded evidence primarily pertains to certain bank statements and tax returns of Judge Cape and her husband.

The trial transcript reflects a certain amount of confusion existing in the resolution of this issue by the trial court. We are satisfied, however, that the following events are reflected in the trial transcript. Appellant filed a subpoena for certain financial records of Judge Cape and her husband, Judge Cape complied with the subpoena, and appellant was allowed to examine but not obtain copies of the documents. These records were admitted in evidence conditionally, but were not to be given to the jury pending further ruling of the trial court. Subsequently, when the appellant attempted to testify re-

garding certain lists containing information about Judge Cape's monthly income and expenses, the trial judge refused to allow appellant to do so, stating "until such time as you can show some participation by the Probate Judge in some criminal activity that is the subject matter of this case, I'm not going to let you go into the Probate Judge's personal finances." Subsequently, appellant was again precluded from testifying regarding seeing certain personal lists of Judge Cape, which allegedly showed that her expenses exceeded her income on a monthly basis. Appellant then attempted to introduce Judge Cape and her husband's bank records and 1984 and 1985 state and federal tax returns. The income tax records were for periods from January 1 through December 31 of each year in question, but the bank statements were for a period of April to April. Subsequently, the trial judge stated that he was "going to allow" the bank statements and tax returns in evidence. However, the trial judge ultimately declined to allow the documents to go to the jury without objection by the appellant.

At trial, appellant testified that Judge Cape frequently cashed checks for herself and others at the office using cash drawer funds, and that she frequently observed checks of Judge Cape in the amounts of $350 and $240, respectively, being held in the cash drawer. Appellant denied that she had taken the money. However, she stated that she never suspected anyone else in the office of stealing the money, and that she had never accused anyone else of committing the crime. Appellant did believe and speculate that the actions of Judge Cape in repeatedly keeping two checks of $350 and $240 in the cash drawer "could have" something to do with the missing money, because it was not "normal to keep that amount of — checks written for that amount in our cash drawer."

The facts of this case are distinguishable from those in *Henderson v. State,* supra. In *Henderson,* it was held to be prejudicial error to exclude evidence, which was relevant to prove the existence of a criminal motive of another person who had been expressly accused by the defendant of committing the crimes with which the defendant had been charged, when the defendant's sole defense was that the other person was the real perpetrator of the crimes. In the case at bar, the appellant, although given every opportunity to do so, declined to accuse another specific person of committing the theft or to offer other evidence tending to establish that fact. The trial judge properly concluded that *Henderson* was not dispositive of the issue concerning the admissibility of Judge Cape's financial records, and repeatedly informed the appellant that the relevance of these records would have to be satisfactorily established.

The question of relevancy of the financial records of the probate judge was a question for the court, "and in the absence of an abuse of

judicial discretion, this court will not interfere" with the trial court's ruling. *MacNerland v. Johnson*, 137 Ga. App. 541 (1) (224 SE2d 431). The appellant has failed to establish that the trial court abused its discretion in declining to release these financial records to the jury. Further, while the object of all legal investigation is the discovery of the truth (OCGA § 24-1-2), this objective is not well served by allowing a criminal defendant to engage in a time-consuming and confusing "witch-hunt." It is well established that " 'relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ' " *Carter v. State*, 257 Ga. 510 (1) (361 SE2d 175). We are satisfied that both waste of time and confusion of the issues would have occurred had these financial records been presented to the jury and the appellant had attempted to cross-examine the probate judge over the many deposits and withdrawals reflected in the bank statements. In view of the questionable probative value of the financial records, especially in light of the evidence showing unreceipted tickets appearing on days when the probate judge was not in the office, we are satisfied that the danger of issue confusion and time waste substantially outweighed any probative value of the financial records. Finally, assuming error occurred in this instance we would not hesitate to apply the doctrine of harmless error using the standard set forth in *Smith v. State* and *LaRue v. State*, supra. Appellant's fifth assignment of error is without merit.

4. Appellant's sixth enumerated error is that the trial court erred in allowing appellee's expert witness to invade the province of the jury.

Appellant has failed to follow our codal requirements that enumerations "shall set out separately each error relied upon." OCGA § 5-6-40; *Hester v. Baker*, 180 Ga. App. 627 (1) (349 SE2d 834). However, each allegation of error in the sixth enumeration, deemed worthy of discussion, will be discussed separately. Any issue raised in the sixth enumeration that is not separately addressed is without merit.

In *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678), the Supreme Court held that "[e]xpert . . . testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." Thus, "an expert may not testify as to his opinion as to the existence *vel non* of a fact . . . unless the inference to be drawn from facts in evidence is beyond the ken of the jurors — that is, unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing — from facts in evidence — such an inference for themselves." *Allison v. State*, 256 Ga. 851, 853 (353 SE2d 805). While

it is true that investigative auditing is a complex and demanding discipline, certified public accountants, like other experts cannot be allowed to invade those factfinding areas which are by law within the jury's province.

During trial, appellee introduced in evidence over timely objection, both testimony of and, a chart (see appendix) prepared by the certified public accountant who performed the investigative audit of the probate court. The conclusions presented to the jury by the testimony and chart purport to be based upon the expert witness' "experience as a Certified Public Accountant." The expert previously had testified that among other discrepancies certain tickets had been received, the disposition portion on the back of the tickets had been filled-in by the appellant, no receipt had been written in the cash receipt journal for the funds accompanying the tickets, that checks pertaining to some of the tickets had been found to have been deposited in the bank, that the bank deposits should therefore have been greater than the amount reflected in the cash receipt journal but the two items still balanced, and thus a certain stated sum of money was missing. The expert's chart and testimony basically reached a conclusion as to how this type of transaction could be accomplished. Specifically, the accountant concluded that if a check accompanied an unreceipted ticket, it could be held and not deposited until another ticket came in with cash in the same amount as the retained check, then the check from the first unreceipted ticket could be substituted for the cash in the second ticket, the second ticket could then be receipted and the check from the first ticket deposited causing the cash receipt journal to continue to balance with the deposits being made in the bank.

Appellee cites a series of cases in an attempt to establish that the province of the jury was not invaded by the chart and testimony. Of these cases the most persuasive is *Lowe v. State*, 179 Ga. App. 377, 378 (346 SE2d 845). However, this case is distinguishable from the situation before us. Unlike the expert testimony admitted in *Lowe*, which discussed the unlikeliness for certain physical evidence to accumulate on items belonging to the defendant and the meaning of such an unusual accumulation, the scenario testified to by the expert in this case involves nothing requiring expert knowledge or even the application of complex logic. Moreover, this type of inference, based on evidence of record, could be presented adequately to the jury in closing argument.

We find that it would not be "beyond the ken of the average layman" to conclude that these unreceipted checks found their way into the bank when the books still balanced because they had been substituted for a like amount of receipted cash. Having found that error occurred in the admission of this evidence, we must now test for

prejudice. *Riceman v. State*, supra.

Having carefully examined the trial transcript, we are satisfied that the accused has not been prejudiced by the introduction into evidence of the chart and expert testimony discussed above, or by the introduction of any other testimony given by the expert witness. In this regard, we note that the trial judge carefully required the State's expert witness not to give his conclusion that it was the appellant who retained any of the missing funds. Further, the trial court charged the jury regarding the presumption of innocence, burden of proof, reasonable doubt, expert witness testimony, and that the jury was "not bound or concluded by the testimony of any witness, expert or otherwise." The trial court also charged the jury that, "opinion evidence is not conclusive or controlling. It is submitted to you, the jury, merely for whatever you may think it is worth. You may, upon review of the facts in the case, disregard entirely the opinion of any witness, whether he be an expert or non-expert." Thus, we find that "it is 'highly probable that the error did not contribute to the judgment,' " and accordingly that the error was harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

Appellant further asserts that "a travesty of justice" occurred which denied appellant "the right of fundamental fairness," when the trial court only allowed him $400 "to controvert the appellee's expert witness . . . a Certified Public Accountant" who received in excess of $4,000 to conduct his investigative audit and to testify for the State. The Supreme Court has held that "the general rule is that the grant or denial of a motion for assistance of expert witnesses and other investigative services lies within the sound discretion of the trial court." *Castell v. State*, 250 Ga. 776, 783 (301 SE2d 234). It is likewise within the sound discretion of the trial court to determine the amount of funds, if any, that shall be allocated for the preparation of the defense. Appellant has failed to demonstrate any abuse of discretion by the trial judge. Incidentally, we note that in a pretrial proceeding the appellant initially requested an amount calculated at a rate of $3.35 per hour for a period of 79 hours, and was awarded $400 by the trial judge. Further, considering the trial record in its entirety, we are satisfied that the appellant has been afforded both a "fair opportunity to present her defense" and "meaningful access to justice." See generally *Ake v. Oklahoma*, 470 U. S. 68, 76-77 (105 SC 1087, 84 LE2d 531) (providing psychiatrist to an indigent defendant).

Appellant also argues that the testimony of the Certified Public Accountant was tainted for various reasons including conflict of interest and failure to follow accepted auditing standards. Appellant supports this argument with reference to an affidavit obtained from another Certified Public Accountant whose affidavit is attached to appellant's amended motion for new trial. We have considered these

allegations in light of the enumerated error that appellee's expert was erroneously allowed repeatedly to invade the province of the jury and find that it adds nothing to our disposition of this issue. Further, we have carefully examined the affidavit in question and find that it does not meet the six-prong standard for new trial set forth in *Rogers v. State*, 257 Ga. 590 (2) (a) (361 SE2d 814) and *Timberlake v. State*, 246 Ga. 488 (271 SE2d 792). Further, we find nothing contained in the affidavit that would render the testimony of appellant's expert inadmissible per se. See generally OCGA § 24-9-67.

5. In the part of appellant's brief labeled "CONCLUSION," it is asserted that "[t]he apellant [sic] was denied the right of proper cross examination of apellee's [sic] expert witness." The constitutional right of cross-examination has been statutorily recognized in this state. OCGA § 24-9-64. But, this right is not unlimited, and "[t]he right of cross-examination is not abridged where the examination is limited by the trial court to relevant matters by proper questioning." *Johnson v. State*, 158 Ga. App. 333, 334 (280 SE2d 379). The specific question which appellant was prevented from asking was irrelevant and thus the answer thereto was properly excluded. OCGA § 24-2-1. However, the trial record reveals the following colloquy between the trial judge and appellant's counsel: "THE COURT: Well, are you hunting other ways that embezzlement can take place? Is that what you're after? MR. RHYMER: Yes, sir, and as to. . . . THE COURT: I'm going to sustain the objection. Go ahead. MR. RHYMER: . . . as to his experience, Your Honor, and what he bases it on. And you say I can't ask that anymore? THE COURT: No, sir."

Reviewing the trial transcript from the point when the initial objection was made to the irrelevant question to the conclusion of appellant's cross-examination of the State's expert, we are satisfied that the negative response of the trial judge to counsel's question was limited in scope to precluding the asking of a specific line of questions similar to that irrelevant question to which the objection had been filed; and, the ruling was not meant to be and did not have the legal effect of precluding subsequent proper cross-examination by counsel regarding the basis on which the expert's opinion was fixed. Thus, we are satisfied that appellant was neither denied his right of cross-examination nor was he deprived of a fundamentally fair trial by the trial court's ruling. Thus, we find that this assertion of error, contained in appellant's brief but not properly enumerated as a specific error, is without merit.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

# METHOD OF BALANCING ON DEPOSITS WHILE TAKING MONEY

## PERSON (A)
MAILS IN CHECK

## PERSON (B)
PAYS IN CASH

EXAMPLE
SPEEDING SPEEDING
$47 $47

**CHECK RECEIVED**
DISPOSITION PLACED ON BACK OF TICKET
NO RECEIPT WRITTEN

CHECK NOT PUT IN DEPOSIT (#47) - - - →

**CASH RECEIVED**
& RECEIPT WRITTEN
DISPOSITION PLACED ON BACK OF TICKET ($47.00)

CHECK RECEIVED FROM (A) PLACED IN DRAWER; CASH REC. FROM (B) RETAINED

HOW DISCOVERED:
MATCH TICKETS AGAINST RECEIPTS. MANY TICKETS SHOW MONEY RECEIVED BUT NOT RECEIPTED.

RESULT: RECEIPT = CHECK AMOUNT; CASH RETAINED

APPENDIX

904

Decided April 6, 1988 —
Rehearing denied April 25, 1988 — 

William Rhymer, Ellen Gettinger, for appellant.
Timothy G. Madison, District Attorney, T. David Motes, Deborah Wilbanks, Assistant District Attorneys, for appellee.