A89A0598, A89A0599. OWENS v. THE STATE (two cases).
A89A0600. TARD v. THE STATE.
(384 SE2d 920)

McMURRAY, Presiding Judge.

Defendants Joe Owens, Jr., Willie June Owens and Garland Tard were indicted for trafficking in cocaine (Count 1) and theft by receiving stolen property (Count 3). Count 2 involved another defendant who is not one of the appellants in the cases sub judice. The State presented the following evidence at a jury trial:

Defendant Garland Tard and defendant Joe Owens, Jr., leased a two-bedroom "duplex" apartment at 2422 Goodwin Drive in Macon, Georgia. Investigator Russell Nelson, "with the Macon/Bibb County Drug and Vice Unit," obtained information from a "confidential source" which led him to suspect that cocaine was being distributed from defendant Joe Owens, Jr.'s and defendant Garland Tard's apartment. Acting on this tip, Investigator Nelson "searched [his confidential] source . . . to insure he had no drugs on his person and provided

[the confidential] source . . . with a body monitor and United States currency. [Investigator Nelson] rode with [the confidential] source . . . to [defendant Joe Owens, Jr.'s and defendant Garland Tard's apartment] and watched [the] source enter the premises. . . . After . . . approximately two minutes[, the confidential source] returned directly to [Investigator Nelson] and turned [what appeared to be] cocaine over to [the investigator]."

At about 8:45 p.m. on March 10, 1988, after obtaining a search warrant, Investigator Nelson and five other law enforcement officers went to the apartment in plain clothing to execute the warrant. Investigator Nelson took three officers and covered the front door. Two other officers covered the back door.

As Investigator Nelson's men approached, they observed two men exiting the apartment. These men were directed back into the apartment and, after the officers entered, they discovered nine other people in the apartment, including the defendants. Defendant Joe Owens, Jr., was in the living room, talking on the telephone and sitting on the living room sofa. Defendant Garland Tard was standing in the living room and defendant Willie June Owens was alone in the kitchen, holding a grocery sack.

Investigator Nelson immediately informed defendant Joe Owens, Jr., that he and his men were law enforcement officers and that they were there to conduct a warranted search of the apartment. The search began and several articles of contraband were found in the apartment. As packets and bottles of cocaine were discovered and displayed by the searching law enforcement officers, defendant Joe Owens, Jr., "looked up . . . and . . . said, all those drugs are not mine [and later asked,] are you going to charge me with all of that." Defendant Joe Owens, Jr., also "asked several times during the course of an hour or so [whether Investigator Nelson and his men] were . . . police officers. [In response, Investigator Nelson] showed [his] badge [and] the search warrant. [Defendant Joe Owens, Jr.] looked at the search warrant, . . . looked at the search warrant and . . . said, well, there's no seal on this search warrant, how do I know y'all are just not ripping me off . . . ." Investigator Nelson and another officer displayed their identification and the search continued.[1]

On the floor, behind the sofa where defendant Joe Owens, Jr., was sitting, a bottle was discovered which contained 23 pieces of

---

[1] One of the men, who was observed exiting the apartment before the search was conducted, had concealed in his wallet a marijuana "cigarette butt." This man was also found carrying a "[s]ilver . . . Derringer" (pistol) that "was loaded with one .45 long Colt silver-tip [bullet] and one .410 shotgun slug." One of the other occupants of the apartment was observed attempting to conceal a bottle that contained 17 pieces of "rock" or "crack" cocaine. This cocaine weighed 3.59 grams and had a street value of between $20 and $40 per "rock."

"rock" or "crack" cocaine; a plastic bag containing 14.2 grams of 99 percent pure cocaine in "rock" or "crack" form; a plastic bag containing 14.5 grams of powdered compound, which was 97 percent pure cocaine; and, a plastic bag containing 10 smaller plastic bags of cocaine compound, comprising 13.1 grams of powder. $423 in cash was found in defendant Joe Owens, Jr.'s pocket and a set of keys belonging to defendant Joe Owens, Jr., was found under the sofa with the stash of cocaine.

Defendant Garland Tard's white jacket was found on the sofa in the living room. Inside the "breast pocket" of the jacket, there was discovered a matchbox containing 12 pieces of "rock" or "crack" cocaine. Next to the jacket, there was found a "Black .38 Derringer" (pistol) and a plastic bag, containing 43 pieces of "crack" or "rock" cocaine.

A grocery sack containing $5,264 in cash was found in the kitchen, near where defendant Willie June Owens was first observed standing. A bottle containing four large pieces of "rock" or "crack" cocaine was found in the kitchen garbage basket. This cocaine was valued at $100 per "rock."

Six pieces of "rock" or "crack" cocaine were found in a bottle in an "ashtray on the living room table." Eighteen pieces of "rock" or "crack" cocaine were found in a bottle that was hidden in the bathroom "up under the [cloth] cover" of the "toilet bowl tank." A small bag of cocaine was found in the living room "on the floor up under the corner of the love seat." Fifteen pieces of "crack" or "rock" cocaine were found in a matchbox, hidden on a closet shelf in defendant Joe Owens, Jr.'s bedroom. Also found in defendant Joe Owens, Jr.'s bedroom closet were four sports coats and a suit that had been recently stolen from a local department store. Finally, a "small bag of crack" cocaine was found on the counter of a bar that separated the living room from the kitchen.

After the State rested, defendant Garland Tard testified that he and defendant Joe Owens, Jr., leased the "duplex" apartment for use as a fundraising center for defendant Joe Owens, Jr.'s and defendant Willie June Owens' nine-year-old niece, who was then in need of "a bone marrow transplant." Defendant Garland Tard further explained that "different entertainment" was conducted at the apartment and that "fish, chicken, pork chops, hot dogs[,] hamburgers [and] soft drinks" were sold during the "entertainment" to raise money.

Defendant Willie June Owens testified that his "older brother," defendant Joe Owens, Jr., "coordinated" the fundraising effort for his niece; that he often assisted in conducting "entertainment" for the charity; that the "entertainment" would "be going on all day" and into the "night"; and that "whoever be [sic] there at [the] time" would be responsible for maintaining the funds raised for the charity.

Defendant Willie June Owens also testified that, on the night the police searched the apartment, he was there to help sell "sandwiches and stuff" and to "[collect] money" for the charity. He further explained that the police found no "entertainment" food in the apartment at the time of the raid because "[t]he girl that was going to cook had not gotten there yet."

After considering the evidence presented at trial, the jury found defendants Joe Owens, Jr., and Garland Tard guilty of trafficking in cocaine and theft by receiving stolen property. The jury found defendant Willie June Owens guilty of the lesser included offense of possession of cocaine with intent to distribute and not guilty of theft by receiving stolen property. Defendant Joe Owens, Jr., appeals in Court of Appeals Case No. A89A0598; defendant Willie June Owens appeals in Court of Appeals Case No. A89A0599; and defendant Garland Tard appeals in Court of Appeals Case No. A89A0600. *Held*:

1. Defendants Joe Owens, Jr., and Willie June Owens have filed identical enumerations of error and briefs. In their first enumeration of error, they contend "the verdict of the jury is against the weight of the evidence and unwarranted under the law and evidence as to all three counts of the indictment." In their third enumeration of error, they contend "the verdict is against the law as it relates to actual possession of cocaine." Defendant Garland Tard contends in his second enumeration of error that the court erred in denying his motion for directed verdict of acquittal.

(a) *Trafficking in Cocaine.* (Count 1 of the indictment)

"Any person who knowingly sells . . . or who is knowingly in actual possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, . . . commits the felony offense of trafficking in cocaine . . . ." OCGA § 16-13-31 (a) (1).[2]

More than 28 grams of pure cocaine was found in defendant Joe Owens, Jr.'s and defendant Garland Tard's apartment. Some of the cocaine was found in plain view; some of the illegal drug was found hastily stashed in and under household furnishings and some of the cocaine was found carefully hidden in various spots throughout the apartment. This evidence is sufficient to support a finding that someone was involved in trafficking in cocaine. Nonetheless, defendants argue that there was no evidence to link them to "actual possession" of the cocaine, which is required to support defendants Joe Owens, Jr.'s and Garland Tard's convictions for trafficking in cocaine. See *Lockwood v. State*, 257 Ga. 796 (364 SE2d 574).

---

[2] Defendants were indicted under the provisions of OCGA § 16-13-31 (a) (1), in effect on March 10, 1988, and quoted in pertinent part in Division 1 of our opinion. This Code section was amended, effective March 28, 1988, deleting the word "actual" which preceded the word "possession" in subsections (1) and (2) of OCGA § 16-13-31 (a).

"As repeated in *Lockwood* [*v. State*, supra], actual possession . . . ' "[is when a] person . . . knowingly has direct physical control over a thing at a given time . . . ." (Cits.)' The difference between actual and constructive possession 'is most assuredly one of degree.' *Dalton v. State*, 249 Ga. 720, 721 (2) (292 SE2d 834) (1982). In [*Dalton*], the Supreme Court adopted this court's statement from CJS that the words actual and constructive possession ' "often so shade into one another that it is difficult to say where one ends and the other begins." ' *Neal v. State*, 130 Ga. App. 708, 711 (2) (204 SE2d 451) (1974). [Thus, there] is no requirement that the proof of actual possession be by direct and not circumstantial evidence. [Further, to be convicted, none of the defendants] had to 'directly commit the crime.' OCGA § 16-2-20 (b) (1). Each is a party to the crime not only if he directly commits it but also if he '(3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.' See *Raines v. State*, 186 Ga. App. 239 (366 SE2d 841) (1988)." *Heath v. State*, 186 Ga. App. 655 (1), 656, 657 (368 SE2d 346).

From this perspective, we observe that defendant Willie June Owens was seen by law enforcement officers holding a grocery sack, which was later found to contain over $5,000 in cash; that cocaine with a street value of over $400 was found in the kitchen garbage basket; and that defendant Willie June Owens was the only person in the kitchen at the time the police entered the apartment. We also observe that defendant Joe Owens, Jr., was seen sitting on the living room sofa, under which were found his keys and a large stash of cocaine; that $423 in cash was found in defendant Joe Owens, Jr.'s front pocket; that cocaine was found hidden in defendant Joe Owens, Jr.'s bedroom closet; and that cocaine was found carefully hidden in defendant Joe Owens, Jr.'s and defendant Garland Tard's bathroom. Thirdly, a matchbox containing 12 pieces of "crack" or "rock" cocaine was found in the "breast pocket" of defendant Garland Tard's jacket and that a plastic bag containing 43 pieces of "rock" or "crack" cocaine was found on the living room sofa, next to defendant Garland Tard's jacket. This evidence, evidence showing that defendants were in charge of the "entertainment" that was being conducted at the apartment and other circumstances surrounding the police raid was sufficient to enable a rational trier of fact to reasonably find, beyond a reasonable doubt, that defendants Joe Owens, Jr., and Garland Tard were in "actual possession" of the more than 28 grams of pure cocaine; that defendant Willie June Owens was in "possession" of cocaine and that defendants were involved in a joint enterprise on the night of the police raid which included the distribution of cocaine for money. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Consequently, the trial court did not err in denying defendant Gar-

land Tard's motion for directed verdict of acquittal with regard to his conviction for trafficking in cocaine. Defendant Joe Owens, Jr.'s first and third enumerations of error present no grounds for overturning his conviction for trafficking in cocaine. See *Heath v. State*, 186 Ga. App. 655 (1), supra; and *Williams v. State*, 188 Ga. App. 334, 335 (2) (373 SE2d 42). It also follows that defendant Willie June Owens' first and third enumerations of error are without merit with regard to his conviction for the lesser included offense of possession of cocaine with intent to distribute. OCGA § 16-13-30 (b). See *Houston v. State*, 180 Ga. App. 267, 269 (4) (349 SE2d 228).

(b) *Theft by Receiving Stolen Property*. (Count 3 of the indictment)

"A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession or control or lending on the security of the property." OCGA § 16-8-7 (a).

Four sport coats and a suit that were recently stolen from a local department store were found in defendant Joe Owens, Jr.'s bedroom closet. This evidence, along with evidence showing that stolen merchandise is often traded for illegal drugs and evidence that defendant Joe Owens, Jr. was guilty of trafficking in cocaine, was sufficient to authorize the jury's finding, under the standard of proof required in *Jackson v. Virginia*, 443 U. S. 307, supra, that defendant Joe Owens, Jr., was guilty of theft by receiving stolen property beyond a reasonable doubt. See *Pruiett v. State*, 159 Ga. App. 396 (1) (283 SE2d 625). However, there was insufficient evidence to show that defendant Garland Tard was guilty of theft by receiving stolen property. The stolen property was found in defendant Joe Owens, Jr.'s bedroom closet, it was not found in any portion of the apartment in which defendant Tard had control or possession. The fact that stolen property is often traded for drugs and that defendant Tard was guilty of trafficking in cocaine is simply insufficient evidence to authorize a finding, beyond a reasonable doubt, that defendant Tard was in possession or control of the stolen property. See *Jackson v. Virginia*, 443 U. S. 307, supra. Consequently, defendant Garland Tard's conviction for theft by receiving stolen property must be reversed for lack of evidence to sustain his conviction. Compare *Parrott v. State*, 188 Ga. App. 564 (373 SE2d 828).

2. In his first enumeration of error, defendant Garland Tard contends the trial court erred in denying his motion to sever, arguing that his case "was prejudiced by what was introduced as to the other two defendants."

The following factors have been deemed relevant in "considering

motions to sever: 1. Will the number of defendants create confusion of the evidence and law applicable to each individual defendant? 2. Is there a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court? 3. Are the defenses of the defendants antagonistic to each other or to each other's rights? See *People v. Maestas*, 517 P2d 461 (Colo. 1973)." *Cain v. State*, 235 Ga. App. 128, 129 (218 SE2d 856). "In making his motion for severance, [defendant Garland Tard] had the burden to make a clear showing of prejudice and consequent denial of due process. See *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975)." *Allen v. State*, 255 Ga. 513 (1), 516 (340 SE2d 187).

In the cases sub judice, defendant Garland Tard has failed to show that his joint trial was confusing or misleading with regard to the law or the evidence. Further, we find no evidence admissible against one defendant that was not admissible against all of the defendants. Thirdly, there was nothing antagonistic in the defendants' defenses; all defendants denied the charges relating to trafficking in cocaine and none of the defendants pointed to the other as having knowledge of the cocaine or of the large sum of money that was found at the apartment. On the contrary, defendant Garland Tard's testimony and defendant Willie June Owens' testimony was corroborating as to the reason the three defendants were congregated in the apartment on the night of the police raid, i.e., they were raising money for defendant Joe Owens, Jr.'s and defendant Willie June Owens' sick niece. However, assuming the contrary, "[e]ven if the defenses were considered antagonistic in some minor detail, the mere fact that co-defendants' defenses are antagonistic is not sufficient in itself to warrant separate trials. [*Cain v. State*, 235 Ga. 128, 129, supra]; *Owens v. State*, 251 Ga. 313, 321 (8) (305 SE2d 102) (1983). The decision as to whether the defendants may be tried jointly for a felony less than capital is within the discretion of the judge, OCGA § 17-8-4, and the denial of a motion to sever is not cause for reversal absent an abuse of discretion. *Owens*, supra at 320 (8)." *Spivey v. State*, 186 Ga. App. 236 (3), 237 (366 SE2d 838). See *Baker v. State*, 238 Ga. 389, 391 (2) (233 SE2d 347). In the cases sub judice, we find no abuse of discretion in denying defendant Garland Tard's motion to sever the parties. This enumeration of error is without merit. See William W. Daniel, Ga. Criminal Trial Practice (1986 ed.) § 14-43, 393-397.

3. Defendant Joe Owens, Jr.'s and defendant Willie June Owens' second enumerations of error are identical. They contend "[t]he trial court erred in its charge to the jury on the elements of trafficking in cocaine." However, neither defendant Joe Owens, Jr.'s nor defendant Willie June Owens' briefs present argument or citation of authority in support of this contention. Instead, they argue that "the trial court err[ed] in expressing an opinion by questioning [defendant] Willie

June Owens." Neither defendant Joe Owens, Jr., nor defendant Willie June Owens cite this court to the place in the trial transcript where this alleged error occurred.

Since these enumerations of error are not supported in the briefs by citation of authority or argument, they are deemed abandoned. See Rule 15 (c) (2) of Rules of the Court of Appeals of the State of Georgia; and *Boyce v. State*, 184 Ga. App. 578, 580 (8) (362 SE2d 229). Further, even assuming that the argument asserted in defendants' briefs was properly before this court, they are deemed waived since defendants failed to identify the specific portion of the trial transcript in which the alleged error occurred. See Rule 15 (c) (3) of Rules of the Court of Appeals of the State of Georgia; and *Palmer v. State*, 186 Ga. App. 892, 894 (2), 895 (369 SE2d 38).

*Judgments affirmed in Case Nos. A89A0598 and A89A0599. Carley, C. J., Deen, P. J., Banke, P. J., Birdsong, Sognier, Pope, Benham and Beasley, JJ., concur. Judgment affirmed in part and reversed in part in Case No. A89A0600. Carley, C. J., Birdsong, Sognier and Benham, JJ., concur. Deen, P. J., Banke, P. J., Pope and Beasley, JJ., concur in part and dissent in part.*

BEASLEY, Judge, dissenting.

I respectfully dissent with respect to Division 1 (b), which reverses the conviction of Garland Tard for the crime of theft by receiving stolen property.

As the majority acknowledges, there was evidence that defendants were involved in a joint enterprise for the distribution of cocaine and that stolen merchandise is often traded for illegal drugs. There was no doubt that the still-tagged new clothing, four various-sized sport jackets and a suit of yet another size hanging in the closet, was stolen merchandise. Tard had rented the residence about nine months earlier and had, at least at the beginning, lived there with Joe Owens and paid the rent. Because of Tard's financial condition, the landlord required Owens to co-sign the lease.

When the residence was raided, Tard, Owens, and a number of others were present and the officers found crack cocaine all over, as described by the majority opinion. Tard had a dozen pieces of crack in a match box in the pocket of his jacket which, since he was not wearing it at the time, he denied owning. He exhibited ownership as well as guilty knowledge of the presence of the crack in it by pushing the head of the woman who identified the jacket as his "to get her not to say anything else," in the words of the officer.

A large amount of money, over $5,200 in large denominations, was being handled in Tard's presence when the raid commenced. It could be inferred that the money was proceeds of drug sales. Likewise, it could reasonably be inferred the stolen clothing was also pro-

ceeds of drug trafficking, that is to say, a fruit of the criminal enterprise so that he shared in its receipt, disposition, or retention. OCGA § 16-8-7 (a). The clothing bore the same nexus to the crime as did the cash. Tard was no more relieved of guilty connection with the stolen clothing hanging in the closet of the bedroom apparently occupied by Joe Owens than he was relieved of guilty connection with the cash being held in a paper bag by Willie Owens when the officers entered the residence. Both were part of the operation of the crack house in which he was engaged.

In connection with the count of theft by receiving stolen property, the court charged on aiding and abetting and participating in that criminal endeavor. Considering the entire body of evidence and the illegal business Tard was properly convicted of being a party to, the jury was authorized to find him guilty beyond a reasonable doubt of being "concerned in the commission of" that crime as well, as governed by OCGA § 16-2-20.

I am authorized to state that Presiding Judge Deen, Presiding Judge Banke, and Judge Pope join in this dissent.

DECIDED JULY 14, 1989.

*Althea L. Buafo*, for appellant (case no A89A0600).
*Alvin C. McDougald*, for appellants (case nos. A89A0599, A89A0598).
*Willis B. Sparks III, District Attorney, Vernon R. Beinke, Assistant District Attorney*, for appellee.