S91A0110. HAYES v. THE STATE.
S91A0111. TURNER v. THE STATE.
(405 SE2d 660)

CLARKE, Chief Justice.
Bobby Joe Turner and Alfonzo Hayes were tried together for the

murder of 15-year-old Cory "Moonbeam" Willis.[1] There was testimony at trial that on the evening of the murder a neighborhood drug dealer, Bo, threatened Turner and his family. There was testimony at trial that Bo had fired into Turner's car in which Hayes was riding as a passenger. According to both defendants, Turner borrowed a rifle to protect himself and returned to the scene with Hayes to effect a citizen's arrest of the drug dealer. There they encountered the victim, who, according to both defendants, made a sudden move. There was testimony from another witness, Jerry Lee Rogers, that after Turner told the victim to halt he heard the victim say "It's Moonbeam, don't shoot!" Turner testified that believing that the victim was the drug dealer, he told him to halt and then fired a shot aimed at the leg of the victim. Other witnesses testified that Turner fired two shots at the victim. Jerry Lee Rogers testified that he saw Turner shoot the victim two times. He testified that the victim tried to crawl away. He testified that after Turner fired one shot, Hayes went to his apartment to retrieve a Winchester .30/.30 rifle. Turner then fired another shot at Moonbeam. According to Rogers, Hayes returned with the rifle and threatened Rogers, who ran into his aunt's apartment. He testified that he heard another gunshot but did not see Hayes shoot the victim. He did see Hayes point the rifle at the victim. Another witness said that she saw Hayes shoot the victim with the rifle. There was testimony that Hayes turned the victim over and put the rifle on his chest but at Turner's instruction wiped the fingerprints off the rifle and placed the Winchester .30/.30 rifle in the victim's hand before leaving the scene. At trial the medical examiner testified that either of two gunshot wounds could have been the cause of death. He also testified that he removed .30/.30 bullet fragments from the body of the victim. A firearms expert from the Georgia Crime Lab testified to his opinion that the bullet fragments came from the rifle found by the victim. Turner said that he ran away after discovering that he had shot a neighbor instead of the drug dealer, and he insisted that he was not present when Hayes allegedly fired a rifle shot into the victim's back. Turner was convicted of felony murder. Hayes was convicted of malice murder. Both were sentenced to life imprisonment.

---

[1] Turner and Hayes were indicted August 30, 1988, for the murder of Cory Willis on July 13, 1988. They were tried before a jury beginning November 29, 1988. On December 6, 1988, the jury convicted Turner of felony murder and Hayes of malice murder. On December 6, 1988, both defendants were sentenced to life imprisonment. Turner filed a motion for new trial December 29, 1988. This was denied August 24, 1990. Hayes filed an amended motion for new trial January 3, 1990, which was denied August 24, 1990. The transcript was certified November 15, 1989. Turner's notice of appeal was filed September 13, 1990. Hayes' notice of appeal was filed August 29, 1990. Both appeals were docketed in this court October 24, 1990, and submitted for opinion December 7, 1990. Due to appointment of new counsel after Hayes' appeal, briefs were not submitted in his appeal until April 22, 1991.

Reviewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found both appellants guilty of the crime for which they were convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

## I. Appellant Turner

Appellant Turner enumerates 16 errors. These enumerations basically break down into complaints concerning the prosecutor's opening and closing statements, complaints concerning jurors, the court's failure to sever Turner's trial from that of Hayes, the testimony of Harold Woods, and complaints concerning the charge.

1. Opening statement: Turner complains that the following statement of the prosecutor placed his character in evidence and warranted a mistrial: "They did a check of Cory Willis' blood and urine, and there was no drugs and no alcohol in his body, and his mother will testify to you that he did not hang out with the defendants and their crowd." The court sustained Appellant Turner's objection but declined to grant a mistrial. We do not agree that the court exceeded its authority.

2. Jurors: Appellant Turner contends two jurors should have been disqualified. Turner characterized the answer of one juror as being that she could not follow the instructions of the court concerning a defendant's right not to testify. She actually said that she understood that the court would instruct the jury that the defendant has a right not to take the stand and that the jury may not consider this against him. The juror said that even if the court gave that instruction, it would bother her that the defendant did not get up and tell his side of the story. Turner did in fact testify. He contends that another juror said that she could not be impartial because of a murder in her family and could not look at pictures of the crime scene. The juror actually said that she would try to be impartial but was not sure if she could. However, when questioned by the court she did say that she would follow the instructions of the court.

Neither juror served on the jury. The state argues that since the selection process was not recorded, Turner cannot show that he was forced to exercise a peremptory strike on either juror. However, as we held in *Harris v. State*, 255 Ga. 464, 465 (339 SE2d 712) (1986), "[t]he defendant's use of his peremptory strikes will . . . no longer play a role in our evaluation of the harm caused by the refusal to strike an unqualified juror." These jurors were not disqualified under OCGA §§ 15-12-135 (a); 15-12-163, or 15-12-164, and we find no error in the court's not excusing them for cause.

Turner contends that seven jurors were stricken because of race

and that the state showed no racially neutral reason for striking the jurors. The state did give a racially neutral reason for striking the jurors, and in each case the court found the reason credible. We find these reasons sufficient. Therefore, we hold that no error was shown under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

3. Severance: Turner contends that his trial should have been severed from that of his co-defendant Hayes because the defense theories of the two co-defendants were totally different. According to Turner, the theory of his defense was that he was attempting to make a lawful arrest. Turner contends that Hayes' defense was simply a denial that he had shot at the victim. Appellant Turner insists that his case was prejudiced because Hayes interjected his (Hayes') character into evidence, allowing the state to bring in evidence of previous convictions. The state responds that Turner has not shown any denial of due process, which is the test for severance under *Allen v. State*, 255 Ga. 513 (340 SE2d 187) (1986). The state says that while the defenses were different, they were not antagonistic. We agree. As we said in *Allen v. State*, supra, the defendant must show prejudice and consequent denial of due process before a motion to sever will be granted. The denial of a motion to sever is within the discretion of the trial judge and will not be reversed in the absence of abuse of discretion. We find no error.

4. Testimony of Harold Woods: Turner claims that Harold Woods' testimony should not have been allowed because his name was not given to the defendants until four days after trial had begun. OCGA § 17-7-110. According to Turner, Mr. Woods said at trial that he had given a statement to the prosecution six days before trial. The state responds that the prosecutor discovered the witness on the evening prior to the morning she gave notice to defendants that she would call Woods. The state points out that court was recessed to allow defendants' counsel to interview Woods. Finally, the state insists that any error was harmless since Turner has shown no prejudice through the testimony of this witness and since his testimony was cumulative of that of other witnesses. We find no error. OCGA § 17-7-110 provides that a list of witnesses be furnished to defendant ten days prior to trial unless the prosecutor states in his place that the evidence to be presented is newly discovered evidence which was not available at the time the defendant was furnished the witness list. The prosecutor stated in her place that she had discovered new evidence regarding the witness on the evening before she furnished his name to the defendants. The trial judge gave the defendants' attorneys an opportunity to interview the witness. The fact that the witness would not cooperate with the attorney did not justify disallowing his testimony.

5. Denial of directed verdict: Turner says he was indicted for malice murder and the state then set out to prove transferred intent by facts not indicated by the indictment. The state responds that since the facts proven by the state would support a verdict of malice murder, the trial judge did not err in denying the motion for a directed verdict of acquittal. Reviewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found appellant guilty of the crime for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia,* supra.

6. Jury instructions:

(a) Appellant Turner contends that the court erred in not charging involuntary manslaughter (OCGA § 16-5-3 (b)) because he involuntarily shot the victim while attempting to effect an arrest. Also, he argues that the failure to charge was error because this was the sole defense of the defendant. Turner relies upon *Griffin v. State,* 154 Ga. App. 261 (267 SE2d 867) (1980). However, this case makes it clear that a charge on the defendant's sole defense is mandatory *if there is some evidence to support the charge.* In *Jackson v. State,* 154 Ga. App. 867 (270 SE2d 76) (1980), the Court of Appeals found that there was some evidence from which the jury could have found self-defense. The Court went on to hold that "[f]ailure to charge on self-defense when it constitutes the defendant's only defense is reversible error." Id. at 869. A charge on involuntary manslaughter is not warranted even if it is the sole defense if the evidence does not support the charge.

The state insists that the record reveals no evidence which would support an involuntary manslaughter charge because there is no evidence that Turner was attempting to effect a valid citizen's arrest. OCGA § 17-4-60 provides that a private citizen may make an arrest if a felony is committed in his presence or within his immediate knowledge. A private citizen may make an arrest upon reasonable and probable grounds of suspicion if the offense is a felony and the offender is escaping or trying to escape. For a citizen's arrest to be valid, the citizen must use no more force than is reasonable under the circumstances. The state contends that it would not be reasonable for Turner to attempt an arrest with an AR-15 semi-automatic weapon which he was not licensed to carry. Also, the state points out, deadly force in effecting an arrest is limited to self-defense or to a situation in which it is necessary to prevent a forcible felony. OCGA § 17-4-20. Turner's argument that he was entitled to a charge on involuntary manslaughter concedes that the force used was unlawful. However, we need not reach the question whether a citizen's arrest carried out with unlawful force can be involuntary manslaughter, for we find that there was no evidence that a citizen's arrest was justified. No felony was committed by the victim in Turner's presence or in his immediate knowledge. He

had no grounds for suspicion that the victim was an escaping felon. Turner may argue that he *mistakenly* believed that the victim was a felon. However, there is testimony that the victim answered his command to halt with the words "It's Moonbeam, don't shoot!" We refuse to find that Turner's claim of mistaken identity and his use of deadly force mandate a charge on involuntary manslaughter.

(b) Turner contends that the court erred in charging on felony murder since the purported underlying felony, assault, was not in the indictment. The state responds that the indictment charged Turner with death of the victim "by shooting him with a rifle." Therefore, he was adequately notified that the murder was committed during the commission of an aggravated assault. *Jolly v. State,* 260 Ga. 258 (392 SE2d 527) (1990); *Middlebrooks v. State,* 253 Ga. 707 (324 SE2d 192) (1985).

(c) Turner insists that since he did not request a charge on voluntary manslaughter, it was error to give this charge over his objection under *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976). The state contends that there was some evidence of provocation in the record, and under *Stonaker* the court is authorized to charge a lesser included offense sua sponte if there is evidence supporting it. However, even an erroneous charge on a lesser included offense is not reversible error unless the charge is harmful to a defendant. We find no error.

(d) Appellant Turner claims that the failure to charge on the concept of transferred provocation was error. Because this enumeration of error is accompanied by neither argument nor citation of authority, it is deemed abandoned under Supreme Court Rule 45.

(e) Turner contends that it was error to charge that defendant cannot take advantage of the fact that his unlawful act strikes down an unintended victim. Turner argues that this charge amounted to an unwarranted comment upon the evidence. The state responds that it cannot find this instruction in the record but that even if the court had given the instruction, it would have been justified since Turner testified that he intended to shoot Bo, not the victim. We agree.

(f) Appellant Turner claims that the court's instruction that evidence that he defeated a prosecution or impeded a police investigation could be considered against him amounted to an unwarranted comment upon the evidence. The charge objected to was part of a charge on criminal intent. There was evidence that he discarded the firing bolt on his rifle, preventing the police from tracing the bullet fired into the victim to Turner's semi-automatic weapon. Therefore, the charge was justified. In *Canady v. State,* 68 Ga. App. 735 (23 SE2d 870) (1943), relied upon by Turner in support of this enumeration of error and the previous enumeration of error, the Court of Appeals found reversible error where the court expressed an opinion as to what had or had not been proven. The court did not make such a

comment in connection with either charge complained of here.

7. Statements during closing argument: Appellant Turner contends that the court should have granted a mistrial during closing argument when the prosecutor intentionally went outside the record by remarking that the defense "tried hard and succeeded at keeping the picture of Cory in high school out [of evidence]." The state responds that even if this statement were improper, there was no showing that it was harmful to Turner. Also, the court gave curative instructions and rebuked the prosecutor. Therefore, we find no error. OCGA § 17-8-75.

## II. Appellant Hayes

Hayes raises two enumerations of error which are identical to those raised by Turner in his appeal and have been discussed above. These are an enumeration of error involving the claim that the state exercised peremptory strikes in violation of *Batson v. Kentucky,* supra, and a claim that the trial court erred in allowing the testimony of Harold Woods. Because we have dealt with these claims above and find no additional facts or factors which would cause error in regard to one appellant but not to the other, we do not consider them further.

The remaining enumerations of error which will be dealt with in this opinion are 1) the trial court erred in introducing prior juvenile convictions to rebut Hayes' good character evidence; 2) the trial court erred in denying Appellant Hayes' motion for mistrial when the state misrepresented during closing argument that Hayes had made an incriminating statement; 3) the trial court erred in charging that evidence that appellant defeated a prosecution or impeded a police investigation could give rise to an inference of guilt; 4) the trial court erred in refusing to give Hayes' requested charge on "transferred provocation"; 5) that Appellant Hayes was denied effective assistance of counsel.

1. Counsel for Hayes introduced evidence of his good character. The state on cross-examination elicited information from the character witnesses concerning juvenile offenses. Hayes contends that the court erred in allowing this testimony because a) the state violated the requirements of *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) by failing to give notice that it planned to introduce Hayes' juvenile record; b) the state did not present a factual basis for the allegations that Hayes committed the offenses; c) in asking each character witness about the witness' knowledge of juvenile offenses, the state asked if this changed the witness' opinion of Hayes' good character. Hayes contends that it was error to allow this personal opinion testimony. The state responds that there was no *Brady* viola-

tion and that Hayes failed to preserve the other grounds by timely objection. In the absence of a showing by appellant that the evidence was exculpatory, production is not required by *Brady*. *Alexander v. State*, 260 Ga. 870 (401 SE2d 7) (1991). We have reviewed the other arguments in support of this enumeration of error and find that they are without merit.

2. Hayes complains of the court's charge on impeding an investigation. We have already dealt with this enumeration as it was raised by Turner. As to Hayes, the evidence that he wiped fingerprints from the rifle and put it in the victim's hands was a sufficient evidentiary basis for the charge.

3. Hayes claims error in the trial court's denying his motion for mistrial on the basis that the prosecutor misrepresented during closing argument that he had made an incriminating confession. The prosecutor also displayed a board which had the word "confession" on it. The court gave sufficient curative instructions, instructing the jury that the prosecutor and other counsel were not witnesses and that the jury should remember the testimony and the evidence. After this, the prosecutor referred only to Hayes' "incriminating statement." The court charged the jury fully as to confessions, defining the term, and as to statements. The court also stated in its charge that both defendants in this case had at all times maintained that they were not guilty of the offense charged. We find no error.

4. Appellant requested a charge that if the jury found provocation was given by the one against whom original intent was entertained, then they could find that such provocation transferred to the person who actually suffered the consequences of the acts of the defendant. The court refused to give this charge. Although the court did charge on voluntary manslaughter, appellant contends that refusal to give the requested charge was error because a conviction of manslaughter instead of murder would depend on the jury's accepting a theory that provocation was transferred from Bo to Cory Willis. Appellant relies upon *Olds v. State*, 84 Ga. App. 397 (66 SE2d 396) (1951) in support of his argument. However, this case concerns a charge that a person who kills another by accident while firing at a person whom he would be justified in killing is not guilty. *Olds v. State* is not applicable to the situation here. Appellant has not presented any authority for the requested charge. Further, as argued by the state, the charge requested would have been confusing to the jury in the sense that it ignored the problem of a "cooling off" period. We find no error in the court's refusing to give this charge.

5. In considering Hayes' contention that he did not receive effective assistance of counsel at trial, we must first determine whether this claim was raised at the first opportunity. Even though this issue is raised for the first time on appeal, it was timely raised because

Hayes has been represented by trial counsel until this time.

The claims of ineffective assistance are based on the following: 1) counsel did not preserve Hayes' *Batson* objections for review; 2) counsel put Hayes' character into issue, allowing the state to introduce evidence of juvenile offenses; 3) counsel did not meaningfully participate in voir dire of potential jurors; 4) counsel did not object to the introduction of the juvenile offenses; 5) counsel did not take proper steps to protect Hayes when a witness testified to admissions of co-defendant; 6) counsel did not renew an objection to a witness; 7) counsel failed to take proper steps to protect his client when the state introduced evidence of bad acts and the statement of co-defendant; 8) counsel did not renew his objection to the testimony of Harold Woods whose name was not provided to the defendants prior to trial; 9) counsel erred in agreeing with the state to withhold part of co-defendant's statement on the basis that it created a *Bruton* problem when in fact this part of the statement was beneficial to Hayes; 10) counsel failed to meaningfully participate in cross-examination of witnesses; 11) counsel failed to join co-defendant's counsel in objecting to improper remarks of the state; 12) counsel made unfortunate analogies to Judas, Jimmy Swaggart, Benedict Arnold, Aaron Burr, and Jim Bakker in describing Hayes' good character on closing argument. Hayes argues that without any defense at all the jury would have been hard pressed to find him guilty of malice murder.

We find that the issue of ineffective assistance of counsel must be remanded to the trial court for a hearing.

Judgment in Case No. S91A0111 as to Appellant Turner is affirmed. Appeal S91A0110 of Appellant Hayes is remanded to the trial court for a hearing on the issue of ineffective assistance of counsel.

*Judgment affirmed in Case No. S91A0111. Judgment remanded with direction in Case No. S91A0110. All the Justices concur, except Benham, J., who concurs specially.*

BENHAM, Justice, concurring specially.

Applying the rule stated in *Gamble v. State*, 257 Ga. 325, 327 (357 SE2d 792) (1987), that "[t]he trial court's findings are . . . entitled to 'great deference,' [cit.], and will be affirmed unless clearly erroneous," I concur in the majority opinion's holding "that no error was shown under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986)." However, I believe it would also be appropriate to address the issue of whether a prima facie case of racially-motivated peremptory strikes was made. In order to address that issue properly, we should take this opportunity to do explicitly what the majority has done implicitly: disavow the mathematical approach taken in *Aldridge v. State*, 258 Ga. 75 (365 SE2d 111) (1988). Then we should establish a simple procedure for determining when a hearing must be

held for the purpose of assessing the validity of the reasons behind the use of peremptory challenges. Lastly, we should encourage trial courts to apply strenuous analysis to the explanations offered for the exercise of suspect peremptory strikes.

1. In *Aldridge*, we approved the use by trial courts of a mathematical formula for determining whether a prima facie case has been made that racially motivated peremptory strikes were used. However, in approving the use of such a mathematical approach, this court expressed reservations by observing that "[d]eciding cases through the use of raw numbers carries with it inherent dangers and possibilities of illogical or unjust results." Id. at 79. My real fear is that the use of mathematical formulae will cause us to miss the seemingly unmistakable point of *Batson*, which is that race is an inappropriate consideration in determining a person's fitness for jury service. Though this court alluded to the dangers of a mathematical approach, it failed to fully identify the danger inherent in such an approach. In the case in chief, the trial court stated:

> "The Court will take notice of the composition of the panel of Jurors. The Court will also take judicial notice of the fact that five of the fourteen Jurors selected in this case are black. That shows on its face and per se that there was no racial discrimination exercised by either party in this case. Consequently, the motion is overruled as *Batson v. Kentucky* would not be applicable in this matter."

Although the trial court went on to receive explanations by the state concerning its use of peremptory strikes, its statement that *Batson* did not apply is clear evidence of the need for this court to disavow *Aldridge* because of its potential for breeding confusion as to the basic holding of *Batson*. We continue to see cases where consideration of the *Batson* issue ends with a recitation of the mathematical makeup of the community and the mathematical makeup of the jury panel selected. Such an approach is at variance with *Batson* and with this court's decision in *Gamble*, supra. Allegiance to and respect for *Batson* and its progeny[2] require that we disavow *Aldridge*'s mathematical approach because it impermissibly insulates suspect strikes from inquiry regarding racial motivation.

2. In the exercise of this court's inherent supervisory authority over the administration of justice, we should provide a simple procedure for establishing on the record the facts to be used by the trial

---

[2] *Edmonson v. Leesville Concrete Co.*, 59 USLW 4574 (1991); *Powers v. Ohio*, 499 U. S. ___ (111 SC 1364, 113 LE2d 411) (1991); *Holland v. Illinois*, 493 U. S. 474 (110 SC 803, 107 LE2d 905) (1990).

court in determining whether there has been purposeful discrimination in the use of peremptory challenges. Such a procedure was established in *State v. Jones*, 293 S.C. 54 (358 SE2d 701) (1987), and has been adopted in other states.[3] Georgia should do likewise. Paraphrasing the rule stated in *Jones* so as to accommodate recent United States Supreme Court pronouncements in this area,[4] we should adopt the following policy:

> Rather than deciding on a case by case basis whether a party is entitled to a hearing based upon a *prima facie* showing of purposeful discrimination, the better course to follow would be to hold a *Batson* hearing on any party's request whenever the other party exercises peremptory challenges to remove members of a cognizable racial group from the venire. This bright line test would ensure consistency by removing any doubt about when a *Batson* hearing should be conducted. Further, this procedure would ensure a complete record for appellate review.

3. Reasons given for suspect peremptory strikes must be evaluated rigorously. As this court has cautioned,

> " '[R]ubber stamp' approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson*'s commitment to 'ensure that no citizen is disqualified from jury service because of his race.' *Batson*, 106 SC at 1723." [*Gamble*, supra at 327, quoting from *State v. Butler*, 731 SW2d 265 (Mo. App. 1987).]

If we proceed in the fashion outlined above, we will usher in an era of ungrudging acceptance of the basic tenet of *Batson*, that is, that the integrity of the jury selection process, and thereby the entire justice system, is enhanced greatly when fitness for jury service is not determined by race.

DECIDED JULY 3, 1991 —
RECONSIDERATION DENIED JULY 24, 1991.

*James Robert Sparks, L. Burton Finlayson,* for appellant (case

---

[3] *State v. Holloway*, 209 Conn. 636 (553 A2d 166) (1989); *State v. Moore*, 109 N.M. 119 (782 P2d 91) (1989).

[4] *Powers*, supra, made clear that the person complaining of discriminatory use of peremptory strikes need not be of the same racial group as the jurors being struck, and *Edmonson*, supra, by focusing on the rights of the jurors not to be subjected to racial discrimination in the jury selection process, expands the scope of *Batson* to include all parties to litigation.

450

no. S91A0110).

*Paul L. Howard, Jr.,* for appellant (case no. S91A0111).

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Assistant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf, Mary H. Hines,* for appellee.