## A91A1476. BRITT v. THE STATE.
### (415 SE2d 492)

Andrews, Judge.

Britt and two other defendants were found guilty by a jury of selling cocaine in violation of the Georgia Controlled Substances Act. Britt was also convicted of using a communication facility (a telephone) in the commission of the sale.

1. Britt claims the trial court erred by denying his motion brought pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) claiming the state deliberately discriminated against him on the basis of race by using its peremptory strikes to exclude blacks from the jury. " 'To establish a prima facie case of purposeful discrimination in jury selection under *Batson*, a defendant must show that he is a member of a cognizable racial group, that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race, [and] that these facts and any other relevant circumstances raise an inference that the prosecutor used the practice of peremptory strikes to exclude the veniremen from the petit jury on account of their race. Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging the black jurors. The prosecutor may not rebut the defendant's case merely by denying he had a discriminatory motive. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court will then have the duty to determine if the defendant has established purposeful discrimination.' (Punctuation and citations omitted.) *Burgess v. State*, 189 Ga. App. 790, 792-793 (377 SE2d 543) (1989). The defendant has the burden to complete the record to establish a prima facie case with information revealing 'the racial composition of the panel from which the jury was selected, the racial breakdown of the strikes of both parties, and the racial composition of the resulting jury.' *Aldridge v. State*, 258 Ga. 75, 77 (365 SE2d 111) (1988)." *Shaw v. State*, 201 Ga. App. 438 (411 SE2d 534) (1991).

The record is devoid of any evidence showing the racial composition of the panel from which the jury was selected. Without any such

evidence, even if an inference is raised that the state used its peremptory strikes to exclude blacks on the basis of race, the defendant has failed to demonstrate that, as a result, the percentage of blacks on the jury was lower than the percentage of blacks on the panel. Thus, the defendant failed to make a prima facie case of discrimination under *Batson*. *Brown v. State*, 261 Ga. 184, 185 (402 SE2d 725) (1991); *Aldridge v. State*, 258 Ga. 75, 77 (365 SE2d 111) (1988); *Ponder v. State*, 194 Ga. App. 446, 449 (390 SE2d 869) (1990); *Stewart v. State*, 190 Ga. App. 162 (378 SE2d 387) (1989). Moreover, there is no competent evidence in the record of how the state and the defense exercised peremptory strikes, or the resulting racial composition of the jury. The only record of these facts is in colloquy between court and counsel and argument of counsel which reflects that the state used six of ten peremptory strikes to eliminate blacks, and that the resulting jury contained four blacks and eight whites. "Colloquies between court and counsel and argument of counsel, though included in the record, are not competent evidence of the facts observed therein, and do not suffice to make a proper record of facts required to establish a prima facie case of discrimination. *Nat. Assn. &c. People v. Pye*, 96 Ga. App. 685, 686 (101 SE2d 609) (1957); *Johns v. State*, 166 Ga. App. 656, 657 (305 SE2d 405) (1983)." *Shaw*, supra. No prima facie case of discrimination having been shown by the record, the trial court did not err in refusing to grant the motion.

2. The defendant claims the evidence was insufficient to support the convictions. On appeal of a criminal conviction claiming insufficient evidence, the evidence is viewed in a light most favorable to the jury's finding that the defendant is guilty, and appellate review determines if there was sufficient evidence for a rational trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. *Gurlaskie v. State*, 196 Ga. App. 794-795 (397 SE2d 66) (1990); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The state presented testimony from Henderson, an informant working for the Georgia Bureau of Investigation and the Tift County Drug Squad. Henderson's personal observation of events and what Britt said to him was admissible. *Moore v. State*, 240 Ga. 210, 212 (240 SE2d 68) (1977); *Hardeman v. State*, 180 Ga. App. 632, 633-634 (349 SE2d 839) (1986) (voluntary, noncustodial incriminating statements of defendant admissible through testimony of anyone who heard them). The state introduced sufficient circumstantial evidence of a conspiracy between the co-defendants to sell cocaine so that the statements of co-defendants Jefferson and Green to Henderson during the pendency of the conspiracy were also admissible. OCGA § 24-3-5; *Harris v. State*, 255 Ga. 500, 501 (340 SE2d 4) (1986); *Porterfield v. State*, 137 Ga. App. 449 (224 SE2d 94) (1976) (where sufficient evidence of conspiracy shown, OCGA § 24-3-5 applies even though de-

fendant not indicted for conspiracy). Henderson's testimony showed the following: In cooperation with the GBI investigation, Henderson arranged by telephone to meet with Britt in person and at the meeting told Britt he needed two ounces of cocaine. On cross-examination, Henderson testified he could not remember whether he used the word cocaine or just told Britt he needed two ounces. Britt told Henderson to go home and he would come by his residence at noon that day. When Britt did not arrive at noon, Henderson telephoned him, and Britt told him he would be at Henderson's residence in a few minutes. Shortly thereafter, co-defendant Jefferson arrived at Henderson's residence, delivered the cocaine to Henderson, and told him to send the money for payment. Henderson later went to a trailer where he spoke to Jefferson and co-defendant Herman Green. Henderson paid Green for the cocaine, and complained they had not delivered him the full amount he had ordered. Green replied that he had "gotten the word" from "Big Daddy, the King Man." Henderson testified that Big Daddy was the name commonly used by Green to refer to Britt. Later that day, Henderson went to Britt's residence and told him that "they didn't give me what I ordered." Britt replied to Henderson, "that was all that Herman [co-defendant Green] could get to at that particular time." Neither Britt nor the other two co-defendants testified or presented any evidence. This evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Britt was guilty of selling cocaine to Henderson as charged.

However, Britt's conviction for using a telephone in the commission of the sale must be reversed. The indictment charges that Britt "did call the residence of Herman Green alias Pee Wee and arrange the delivery of cocaine" by Green and Jefferson to Henderson. The state presented no direct evidence that Britt made such a telephone call. Instead, the state relied on an inference from circumstantial evidence that since Britt did not personally deliver the cocaine, nor was he observed personally contacting Green or Jefferson, he must have telephoned Green's residence to communicate Henderson's order. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. The evidence on this charge was insufficient as a matter of law to exclude other reasonable inferences as to how Britt may have informed Green and Jefferson of the sale.

*Judgment affirmed in part and reversed in part. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED FEBRUARY 5, 1992.

*Naman Wood,* for appellant.

*David E. Perry, District Attorney*, for appellee.