S05A1519. HARRIS v. THE STATE.
(627 SE2d 562)

BENHAM, Justice.

Anthony Harris appeals from his conviction for malice murder arising from the shooting death of Quincy King.[1] The evidence at

---

[1] The fatal shooting occurred on September 10, 2002. Harris was arrested on September 25, 2002, and the DeKalb County grand jury indicted him on January 3, 2003, for malice murder, felony murder (aggravated assault), and aggravated assault. At a trial conducted May 27-29, 2003, the jury found Harris guilty on all counts. The trial court sentenced Harris to life imprisonment for malice murder, on account of which the felony murder verdict was vacated by operation of law, and the aggravated assault verdict merged into the malice murder conviction. Harris's motion for new trial, filed June 12, 2003, and amended by present appellate counsel on September 16, 2004, was heard by the trial court on September 20, 2004, and was denied by an order filed on October 6, 2004. Pursuant to a notice of appeal filed November 5, 2004, the appeal

trial, much of it from Harris's companions on the day of the shooting, showed that Harris, while riding in a friend's car, saw King at a gas station. Harris recognized King as a member of a group of men who had beaten him a month earlier. Harris instructed the driver, Tabious Jackson, to return to the place they had dropped off the car's owner, Chanthavisouk Soumphonphakdy. Once Soumphonphakdy was back in the car, Harris borrowed his pistol and directed Jackson to return to the gas station. At the station, Harris got out of the car, confronted the victim, taunted him and shouted obscenities, then shot him four times as King sought to run away. The bullet that inflicted the fatal wound entered King's back and penetrated his heart and one lung. Harris returned to the car and Jackson drove away.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Harris guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Slaughter v. State*, 278 Ga. 896 (608 SE2d 227) (2005).

2. Harris contends the trial court erred in refusing to give his requested charge on voluntary manslaughter, arguing there was at least slight evidence he killed King "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a). The purported provocation was the month-old beating. The trial court's refusal to give the charge was based on the portion of OCGA § 16-5-2 (a) immediately following the portion relied upon by Harris and quoted above: "[I]f there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder." Harris contends the question of whether a month was sufficient cooling time was solely for the jury, but this Court held in *Aldridge v. State*, 258 Ga. 75, 76 (2) (365 SE2d 111) (1988), overruled on other grounds, *Smith v. State*, 263 Ga. 224 (4) (430 SE2d 579) (1993), that the trial court in that case "could conclude as a matter of law that the incident did not constitute even slight evidence of provocation because of the three and a half day cooling off period between the incident and the killing. [Cit.]" Harris argues that holding does not apply here because he had not seen King since the beating a month earlier and, therefore, had not had time to cool off. He cites no authority for this theory and we have found none requiring the cooling period to include ongoing contact between the accused and the victim between the time of the alleged provocation

and the killing. In *Aldridge*, there is no indication that Aldridge had seen the victim between the time the victim hit him with a beer bottle and the time Aldridge saw the victim, chased him into a grocery store, and shot him dead. We conclude that *Aldridge* applies to the present case and supports the trial court's refusal to charge on voluntary manslaughter.

3. Harris enumerates as error the trial court's rejection of the ground of his motion for new trial alleging ineffective assistance of trial counsel. Specifically, Harris complains of the quality of trial counsel's cross-examination of Jackson and Soumphonphakdy and of trial counsel's failure to present alibi witnesses.

> In order to establish ineffectiveness of trial counsel . . . , appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Cit.] There is a strong presumption that the performance of trial counsel "falls within the wide range of reasonable professional assistance." [Cit.] The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. [Cit.]

*Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003). The trial court in the present case concluded that trial counsel's performance fell within the wide range of reasonable professional conduct.

With regard to the cross-examination of the two witnesses who testified they were with Harris when he killed King, Harris contends trial counsel was ineffective because he did not ask Soumphonphakdy whether he was aware of the maximum and minimum sentences he was facing for charges pending at the time of trial, did not ask Soumphonphakdy whether he was aware of the ramifications of a recidivist sentence, did not question Jackson about his criminal history or whether he still had charges pending, and failed to introduce certified copies of the witnesses' convictions. To demonstrate that counsel's failure to address those aspects of the witnesses' credibility was a matter of omission rather than strategy, Harris points to trial counsel's testimony at the motion for new trial hearing that he did not remember why he did not pursue the question of maximum and minimum sentences for pending charges since he usually did under such circumstances, and trial counsel's conclusion from reading the transcript that he should have done so in this case. However, the record also shows that the witnesses' criminal records were put before the jury by the State, as was the fact that Soumphonphakdy had been offered a five-year sentence for his pending charges in exchange for his testimony. Trial counsel's cross-examination of Soumphonphakdy addressed his criminal history and his awareness

of recidivist sentencing, establishing that Soumphonphakdy had at least five felony convictions and had been on probation but had it revoked for violating its terms, that he was a crack addict, that he himself would not trust a crack addict's word, and that he initially lied to the police about the identity of King's killer. Trial counsel's cross-examination of Jackson established that he said nothing to the police about Harris shooting the victim until he himself became a suspect in the killing, and that he then told the police Harris had shot King. In closing argument, trial counsel emphasized the lack of credibility of both witnesses based on their criminal records and their untruthful conduct regarding the investigation of the killing. Trial counsel testified at the motion for new trial hearing that he had been assured by Harris and his family that Jackson's testimony would be favorable to Harris, but was unable to locate Jackson until he appeared at trial and testified that Harris killed King.

" 'The standard regarding ineffective assistance of counsel is "not errorless counsel and not counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance." [Cits.]' " *Jackson v. State*, 276 Ga. 94, 96 (6) (575 SE2d 447) (2003). While hindsight made clear to trial counsel that he could have taken a different approach to the issue of credibility, the record of the trial and the testimony at the motion for new trial hearing support the trial court's holding that trial counsel's representation of Harris fell within the wide range of reasonable professional assistance.

Hindsight did not vary trial counsel's view of the decisions not to introduce the certified copies of convictions and not to present an alibi defense based on the testimony of family members that Harris was with them. Counsel testified regarding the certified copies of convictions that since the fact of the convictions was already before the jury, he refrained from offering evidence of the convictions so as to preserve the right to the last closing argument. Regarding the alibi defense, counsel testified at the motion for new trial hearing that he is generally skeptical of alibi testimony when there is contrary direct testimony, that his impression of the witnesses who offered an alibi in this case was that they would not be credible, that he shared with Harris his concerns about presenting their testimony, and that he believed Harris concurred with the decision not to present that testimony. The trial court held, in denying the motion for new trial, that it would not second-guess counsel's strategic and tactical decisions at trial. That holding comports with the law: "[C]ounsel's decisions that amount to reasonable trial strategy do not constitute deficient performance." *Harris v. State*, 279 Ga. 522, 528 (6) (615 SE2d 532) (2005). The record and the law support the trial court's holding that trial counsel rendered reasonably effective assistance to Harris at trial.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 13, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

*Blend & Michael, James D. Michael,* for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Robert M. Coker,
Assistant District Attorney, Thurbert E. Baker, Attorney General,
Julie A. Adams, Assistant Attorney General,* for appellee.

