## A96A2531. DANIEL v. THE STATE.
### (482 SE2d 409)

SMITH, Judge.

Candy Daniel was charged with murder, OCGA § 16-5-1 (a), for stabbing her mother to death. She claimed self-defense, and the jury convicted her of voluntary manslaughter, OCGA § 16-5-2 (a). We affirm.

1. In two enumerations of error, Daniel claims the evidence did not support her voluntary manslaughter conviction and demanded a finding that she acted in self-defense. We apply the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979) and view the evidence with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986).

In February 1994, the victim's body was found discarded and decaying in the woods behind her home. She had suffered four separate stab wounds to the left side of her chest and one to the right side of her neck, as well as blunt trauma on the top and side of her head. Of the four stab wounds, three were serious enough that any one of them would have been fatal. Daniel, the victim's daughter, gave statements to police on March 2 and July 5 in which she denied knowing how her mother died. On July 8, after police told Daniel a bloody fingerprint found at the scene matched hers, she stated she could not explain the fingerprint but said she had witnessed her aunt "Bootsie" stab her mother while another man was present. In subsequent interviews on July 26, Daniel said a man named "Keith French" stabbed her mother in the presence of other named witnesses. Finally, in statements taken the evening of July 26 and the morning of July 27, Daniel admitted she had killed her mother after her mother attacked her with a knife. The two were wrestling on the ground, Daniel claimed, when the knife fell from her mother's hands. Daniel stated she picked up the knife and stabbed her mother, who was on top of Daniel at the time.

In these final statements, Daniel gave conflicting stories concerning two individuals she claimed witnessed the fight. Daniel did not testify at trial. The State also produced evidence that allowed its

expert to opine that the victim was standing upright when she was bleeding and that it appeared the victim tried to get away from her attacker.

As Daniel correctly contends, the State had the burden of disproving the justification defense. *Austin v. State*, 218 Ga. App. 90, 91 (2) (460 SE2d 310) (1995). This evidence, however, supports the jury's verdict rejecting the self-defense claim. "The distinguishing characteristic between voluntary manslaughter and justifiable homicide is that the accused was so influenced and excited that [s]he reacted passionately rather than simply to defend [her]self. [Cit.]" *Syms v. State*, 175 Ga. App. 179, 180 (1) (332 SE2d 689) (1985). Whether Daniel acted in the heat of passion or in self-defense was a matter for the jury to determine. *Nelson v. State*, 213 Ga. App. 641, 642 (1) (445 SE2d 543) (1994). Even though the only eyewitness account of the stabbing presented at trial was Daniel's own statement to police, the jury was not required to believe her claim of self-defense. *Syms*, supra at 180; *Jenkins v. State*, 241 Ga. 212 (244 SE2d 868) (1978).

2. Daniel contends the admission of her statements of July 8, July 26, and July 27 was error. After a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the trial court determined Daniel made those statements after being informed of her *Miranda* rights and admitted the statements as freely and voluntarily given. This Court will accept the trial court's factual findings on this issue unless they are clearly erroneous. *Mejia v. State*, 264 Ga. 230 (2) (443 SE2d 486) (1994). The record shows that before each interview, Daniel indicated she understood and waived her *Miranda* rights. During the course of these interviews, she signed several forms indicating she understood her rights but freely and voluntarily waived them in the absence of any threat or promise. At the July 8 interview, one officer did say to his partner in Daniel's presence, "If she's not going to tell that's what happened . . . it's going to be rough on her." However, he then explained to Daniel that he meant the evidence showed she was at the scene of the crime, and if she could not explain the inconsistency between the evidence and her prior statements she would have a "tough" time. The officer's statement was nothing more than a permissible exhortation to tell the truth. See *Tyler v. State*, 247 Ga. 119, 122 (2) (274 SE2d 549) (1981). Under these circumstances, "[n]othing that the officer said could reasonably have been interpreted by [Daniel] as eliciting an untrue confession of guilt." *Shelton v. State*, 196 Ga. App. 163, 164 (3) (395 SE2d 618) (1990). The trial court did not err in ruling the statements admissible. *Mejia*, supra.

3. Daniel claims the trial court erred by denying her motion for continuance after an officer she subpoenaed for trial left the jurisdic-

tion. The officer apparently would have testified that the victim told him she was beaten up by a boyfriend, evidence Daniel asserts was material to the self-defense claim.

Before a continuance based on the absence of a witness may be granted, the movant must show each of the requirements of OCGA § 17-8-25. *Caver v. State*, 215 Ga. App. 711, 712 (2) (452 SE2d 515) (1994). Assuming without deciding that Daniel met the remaining prerequisites of that statute, the trial court did not abuse its discretion in denying the motion because this evidence was not material to the claim of self-defense. *Caver*, supra. Although acts of violence by the victim against third parties may be relevant to a claim of self-defense, see *Chandler v. State*, 261 Ga. 402, 407 (3) (b) (405 SE2d 669) (1991), the proffered testimony showed only that the deceased had herself been the victim of violence. See *Wells v. State*, 261 Ga. 282, 283 (4) (b) (404 SE2d 106) (1991) (evidence not admissible which did not suggest violence on part of victim against third persons).

Even if this incident would have shown the victim's violent propensities, this evidence was cumulative. Eight other witnesses either testified that the victim was a violent person or gave accounts of specific incidents in which the victim acted violently towards the defendant, third parties, or herself. Therefore, the trial court's denial of the motion for continuance was not error. *Daniel v. State*, 180 Ga. App. 179, 181 (4) (348 SE2d 720) (1986) (continuance not required where sought-after evidence would be cumulative).

4. Daniel claims the trial court gave an erroneous charge on justification. She points to the court's statement, "Once the issue of an affirmative defense is raised, the burden is on the State to *prove it* beyond a reasonable doubt and to the extent required by law." (Emphasis supplied.) We find this to be a mere slip of the tongue, as the court should have said "disprove" instead of "prove." The court went on to instruct the jury that "[t]he State has the burden of proving beyond a reasonable doubt that the Defendant was not justified." Viewing the charge as a whole, we find the trial court's verbal slip did not mislead the jury and was harmless error in light of the court's subsequent statement clearly stating the prosecution's burden. *Looney v. State*, 221 Ga. App. 224, 226 (2) (471 SE2d 243) (1996); *Tenant v. State*, 218 Ga. App. 620, 622 (3) (462 SE2d 783) (1995).

5. Contrary to Daniel's assertion, the trial court did not err by allowing a GBI crime scene specialist to testify that a substance he photographed was blood. The trial court acted within its sound discretion when it qualified this witness as an expert in "the field of crime scene investigation and blood pattern analysis and detection" based on his training and experience in blood analysis. See *Askew v. State*, 185 Ga. App. 282 (1) (363 SE2d 844) (1987). Even if the witness were not qualified as an "expert" to identify a substance as

blood, a lay person may give such an opinion so long as he explains the reasons for that opinion. This agent explained that he had received training in blood analysis. *Wimmis v. State*, 216 Ga. 350, 352 (3) (116 SE2d 547) (1960); *Wright v. State*, 220 Ga. App. 233, 234 (2) (469 SE2d 381) (1996).

6. Daniel enumerates as error a portion of the prosecutor's closing argument that she claims inappropriately shifted the burden of proof to her client, but that closing argument is not part of the trial transcript. "[I]n such circumstances, when we cannot determine what argument was presented, and on what factual basis the trial judge's ruling was based, we normally would affirm peremptorily the trial court's judgment. [Cit.]" *Oller v. State*, 187 Ga. App. 818, 821 (3) (371 SE2d 455) (1988). Daniel's objection to the argument was transcribed, and from that objection, it appears the State's argument challenged Daniel's failure to present witnesses who could corroborate her claim of self-defense. Such a comment would be permissible, especially in light of Daniel's statements indicating that others were present during the fight with her mother. *Sinkfield v. State*, 266 Ga. 726, 728 (5) (470 SE2d 649) (1996). But the trial court responded to Daniel's objection by reminding the prosecutor (and the jury) that the burden never shifts to the defendant to prove self-defense. Daniel neither requested further instructions nor renewed her objection. This issue therefore was not preserved for appellate review. *Jones v. State*, 221 Ga. App. 374, 375 (2) (471 SE2d 318) (1996).

*Judgment affirmed. Andrews, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 14, 1997.

*Candace E. Rader*, for appellant.
*Peter J. Skandalakis, District Attorney, Lynda S. Engel, Assistant District Attorney*, for appellee.