A99A0324. SMITH v. THE STATE.
(516 SE2d 92)

Judge Harold R. Banke.

Gary McDonald Smith was convicted of aggravated assault. On appeal, Smith asserts six errors.

The evidence, when considered in a light most favorable to the verdict, showed that as the victim, Nicholas Coleman, was sitting in his vehicle conversing with a female friend, Smith suddenly drove up. Smith, who was romantically involved with the same woman, had previously instructed Coleman not to continue seeing her. Smith jumped out of his truck to confront Coleman. After threatening to kill him, Smith pulled out a knife and slashed Coleman in the left side of his neck, wrist, and leg as Coleman remained seated in his car. At this point, Coleman escaped out the passenger side door and managed to uproot a mailbox on a pole. Holding the mailbox, Coleman chased Smith up a hill striking him with it as Smith continued to brandish a knife. While Coleman was fending off further attack, the

police arrived and arrested Smith. Police recovered four knives from Smith, including a knife with an open, exposed three-inch blade wet with blood.

At trial, Coleman testified that other than some family violence disputes, he had "a clean record on anything not harming anybody." During cross-examination, Coleman described the circumstances leading to his conviction for the simple battery of his former fiancé and the details of two arrests. He admitted to receiving a probated sentence and being required to attend family counseling.

In its case-in-chief, the State introduced similar transaction evidence of another incident to show Smith's state of mind, course of conduct, and common scheme. In that incident, Smith was charged with terroristic threats after threatening to slash the tires and kill Walter Ford, who had attempted to date the same woman. Police found two pocketknives on Smith.

According to Smith's version of events, Coleman had been the aggressor and lunged at him with the mailbox. Smith testified that after being struck by the mailbox and knocked to the ground, he pulled out a knife, apparently cutting Coleman while defending himself. Smith presented evidence of Coleman's prior acts of domestic violence against Coleman's fiancé who testified that Coleman had slapped, shoved, pushed, and knocked her down on several occasions.

After Smith testified that he did not care who his former girlfriend dated and that he had never had a confrontation with Walter Ford, the State impeached Smith by recalling Ford, its earlier similar transaction witness, to describe two additional occurrences. On one occasion, when Ford attempted to visit the same woman, Smith had retrieved a knife from the kitchen and followed Ford outside. Before he could drive off, Smith hurled a shovel at his truck. During another incident, after Smith discovered Ford was visiting at the woman's home, Smith made numerous threats, including one to blow up Ford's truck. *Held*:

1. Smith contends that the trial court erred by precluding him from questioning a prospective juror about that juror's prior service involving the presiding judge in the role of prosecuting attorney. When defense counsel attempted to ask the prospective juror, "[w]ould your opportunities of seeing Judge Jones before he ascended to the bench working as a prosecutor in any way influence your perception of the facts in this case?" the trial court deemed the question improper and irrelevant. After the court foreclosed Smith from pursuing this line of questioning, Smith did not object to the court's ruling and later exercised a peremptory strike to excuse the juror. Generally, a failure to object forecloses appellate review of the trial

court's decision.[1] *Morgan v. State*, 212 Ga. App. 394, 395 (1) (442 SE2d 257) (1994) (issues and grounds for objection must be raised and ruled upon in the trial court); *Jefferson v. State*, 157 Ga. App. 324, 326 (2) (277 SE2d 317) (1981). Even assuming arguendo that the issue was not waived, in light of the overwhelming evidence of Smith's guilt, we find it highly probable that the limitation on voir dire was harmless. *Henderson v. State*, 251 Ga. 398, 403 (2) (306 SE2d 645) (1983).

2. Smith claims that the trial court erred by precluding him from proving Coleman's violent nature and from impeaching Coleman's claim of peaceableness through evidence of his assault of a pregnant woman in August 1990.

Prior acts of violence committed by a victim may be admissible when certain preconditions are satisfied. *Chandler v. State*, 261 Ga. 402, 407-408 (3) (c) (405 SE2d 669) (1991). However, evidence of acts where the victim is not the aggressor are generally irrelevant and inadmissible. See *Campbell v. State*, 269 Ga. 186, 187 (4) (496 SE2d 724) (1998); *Wells v. State*, 261 Ga. 282, 283-284 (4) (b) (404 SE2d 106) (1991). Coleman admitted that during the incident at issue, he had hit his fiancé. He testified that during this fight both he and she had sustained injuries, including his broken thumb when she struck him with a bottle. But after Coleman's ex-fiancé testified that she had physically assaulted Coleman before he struck her, the trial court refused to permit Coleman's ex-fiancé to testify further about the August incident.

Notwithstanding this ruling, this witness was allowed to testify about two occasions where Coleman had been the aggressor and had struck her. Therefore, the excluded evidence would have been, at most, cumulative and was unlikely to have altered the verdict. *Marks v. State*, 210 Ga. App. 281, 283 (1) (435 SE2d 703) (1993); see *Daniel v. State*, 224 Ga. App. 673, 675 (3) (482 SE2d 409) (1997).

3. Smith contends that the trial court erred by precluding him from proving Coleman's nature for violence and impeaching his claim for peaceableness through evidence that Coleman committed an assault on June 24, 1996.

Coleman admitted to kicking and striking his fiancé during a June 1996 argument. However, Coleman denied that two separate incidents of domestic violence occurred in June 1996, testifying that he could recall only one. He claimed that his conviction stemmed from an incident on June 21 not June 24, notwithstanding the latter date on the certified copy of his conviction.

---

[1] During a hearing where defense counsel proffered his reasons for having struck this juror, he expressed concerns about the juror's partiality and about the juror's acquaintance with a law student assisting the defense.

When the State objected to any testimony by a defense witness, the responding officer who interviewed Coleman's fiancé after the altercation on June 24, Smith's counsel stated that the testimony was being offered as additional evidence of the circumstances of the battery conviction including the fiancé's physical injuries. Finding that Smith was attempting to introduce the evidence for an impermissible purpose, the trial court excluded it.

Although on appeal Smith urges that he wanted to use this witness to impeach Coleman, he did not make this claim at trial. We cannot consider a different argument asserted for the first time on appeal. *Dukes v. State*, 224 Ga. App. 305, 307 (2) (480 SE2d 340) (1997). Nor did Smith submit an offer of proof. Inasmuch as Coleman admitted to inflicting harm upon his fiancé and a certified copy of his battery conviction was entered into evidence, this testimony would likely have been merely cumulative and was unlikely to have altered the verdict. *Marks*, 210 Ga. App. at 283 (1).

4. Smith claims that the court erroneously permitted the State to introduce similar transaction evidence for impeachment purposes which was inadmissible as either direct or rebuttal evidence. We disagree. After Smith testified that he did not care who his former girlfriend dated and never confronted Ford, the State was entitled to impeach Smith with evidence of his untruthfulness. OCGA § 24-9-82. *Laney v. State*, 159 Ga. App. 609, 612 (9) (284 SE2d 114) (1981).

5. Smith asserts that the trial court erred in preventing him from rebutting the State's allegation that he had slashed the tires belonging to the similar transaction witness.

When the State asked Smith's former girlfriend whether Smith had threatened to cut the tires on Ford's vehicle, she answered unresponsively, "Walter [Ford] really don't know [who] cut his tires. He can't say Gary [Smith] cut his tires." She added, "[m]aybe his wife cut them or somebody." Because the witness lacked knowledge of the identity of the tire slasher, her unresponsive comment was inadmissible speculation. *White v. State*, 268 Ga. 28, 31 (3) (486 SE2d 338) (1997). The court properly refused to permit the injection of additional speculation. Id.

6. Smith asserts that the court erred in instructing the jury that it could consider the similar transaction evidence as proof of a common scheme or plan.

The court "strictly limited" the jury's consideration of the similar transaction evidence "as [to show] the state of mind, course of conduct, common scheme of the Defendant. . . ." See *Watson v. State*, 230 Ga. App. 79, 82 (5) (495 SE2d 305) (1998). Based on the testimony, the jurors may have discerned a common thread in Smith's behavior that Smith was prone to jealous feelings about a certain woman and that this jealousy transformed into violent conduct. But

Smith argues that his actions did not fit within the definition of "common scheme." See *Clemson v. State*, 239 Ga. 357, 359 (1) (236 SE2d 663) (1977). Pretermitting whether the jurors who were presumably unschooled in legal nuances decided that the similar incident constituted a "common scheme," or "course of conduct," or evidenced Smith's "state of mind," in light of the overwhelming evidence of Smith's guilt, we find no error. *Harris v. State*, 222 Ga. App. 52, 56 (2) (c) (473 SE2d 232) (1996); see *Jordan v. State*, 230 Ga. App. 560, 561 (497 SE2d 48) (1998).

*Judgment affirmed. Andrews and Ruffin, JJ., concur.*

DECIDED APRIL 9, 1999 — 

*Colin A. Fieman*, for appellant.

*Harry N. Gordon, District Attorney, Michael E. Eberhardt, Assistant District Attorney*, for appellee.