A04A0412. STOCKS v. THE STATE.
(601 SE2d 729)

PHIPPS, Judge.

After a jury trial, Howard Stocks was convicted and sentenced for burglary, felony theft of two shotguns, and misdemeanor theft of a compound bow, charges that stemmed from a single incident. On appeal, Stocks contends that there was insufficient corroboration of his accomplice's statements to support his felony convictions and that the trial court erred in allowing the prosecutor to mislead the jury during closing argument and in charging the jury.[1] Because the record does not support Stocks's contentions, we affirm.

The state presented the testimony of Donnie Rice, who stated that on the afternoon of March 8, 2003, he and a friend returned to

---

[14] See *Albright*, supra.
[15] See generally *Bragg*, supra.
[1] Stocks raises no issues concerning merger.

Rice's apartment after a day of hunting with his friend's two shot-guns. For about two weeks, Stocks had been living in an adjacent apartment with his girlfriend and her son, C. K. Rice noticed that Stocks was outside and that Stocks saw him and his friend take the shotguns into Rice's apartment. Between 7:00 and 8:00 that evening, Rice, his family, and his friend left the apartment for dinner. When they returned about an hour and a half later, they discovered that the blinds hanging at a front window of the apartment were protruding outside the opened window, that the apartment had been ransacked, that the two shotguns, along with Rice's bow, had been stolen, and that the chain that had secured the back door before they left had been unlatched.

Rice's wife testified that Stocks had been the only person who had seen them leave for dinner. She and Rice had immediately suspected that Stocks was involved in the burglary of their home. The Rices went next door, but no one was there.

At about 4:00 a.m., C. K. and his mother came home, and the Rices confronted them about the incident. According to the Rices, C. K. admitted that, at Stocks's request, he had gone with Stocks to the Rices' apartment, located and then raised an unlocked window, and stood watch as Stocks entered the apartment through the window. C. K. told them that Stocks had removed the shotguns and the bow, but he did not know where Stocks had taken them.

The Rices reported C. K.'s account to a police detective, who interviewed C. K. the next day. During the interview, which was recorded and played for the jury, C. K. stated that he was terrified of Stocks. He recounted that on the previous evening, he had been at home with his mother and Stocks, that "someone" had mentioned that the Rices had "nice" guns, that he went with Stocks to the Rices' apartment, that he knocked on the door to determine whether anyone was there, that he found an unlocked window and raised it, that Stocks crawled through that window into the Rices' apartment, that he stood outside as lookout until his mother called for him about a minute later, that he did not see Stocks exit the Rices' apartment, and that about five minutes later, Stocks returned to C. K.'s residence with neither a shotgun nor a bow. C. K. pled guilty in juvenile court to charges against him related to the incident. At trial, however, C. K. deviated from his accounts given to the detective and to the Rices. Therefore, his earlier statements were admitted in evidence.

The state also presented the testimony of the manager of the apartment community, Bobby Harris, who stated that at about 8:30 on the evening of the burglary, he saw Stocks standing outside the Rices' apartment front door, which was about 25 feet from the door of the apartment where he was then living. Harris testified that, at that time, C. K. was standing at the Rices' front window and that no one

else was outside. The state further elicited testimony from Harris that he had several habitual violator convictions from about 14 years before and that the offenses had not been alcohol-related. On cross-examination, counsel for Stocks introduced certified copies of those convictions.

At the conclusion of the state's case, Stocks moved for a directed verdict of acquittal, arguing that the state's case was supported solely by uncorroborated statements of C. K., an alleged accomplice. His motion was denied.

1. Stocks maintains that the state's case was supported solely by uncorroborated statements of C. K. Therefore, he contends, his motion for directed verdict of acquittal was erroneously denied and his convictions are not supported by sufficient evidence.

> A defendant may not be convicted of a felony on the uncorroborated testimony of an accomplice. However, it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence.[2]

Here, C. K.'s statements were corroborated by Rice's testimony that Stocks had seen them bring the shotguns inside the apartment, by Rice's wife's testimony that Stocks had seen them leave their apartment, and by Harris's testimony that Stocks had been standing outside the Rices' apartment, along with C. K., during the time period the crimes were committed. This evidence from independent sources sufficiently corroborated C. K.'s statements.[3]

2. Stocks contends that the trial court erred by allowing the prosecutor to mislead the jury that Harris's driving record had remained unblemished for 14 years. The record shows that after the state's closing argument, Stocks's trial counsel complained about the

---

[2] (Citation omitted.) *Finley v. State*, 252 Ga. App. 66, 67 (2) (555 SE2d 523) (2001); see OCGA § 24-4-8.

[3] See *Finley*, supra; *Parker v. State*, 249 Ga. App. 509, 511 (1) (548 SE2d 475) (2001).

prosecutor's statement that "yes, Bobby Harris has a bad driving record from fourteen years ago." Trial counsel then asserted that "[Harris] has a bad driving record since fourteen years ago and several DUIs. I submit —." The court interrupted counsel, stating that any such convictions had not been made a part of the evidence and that "[the prosecutor is] allowed to comment on the evidence that's brought out in trial. And that was brought out in trial. And the fact that [Harris] had some DUIs wouldn't be relevant anyway." Trial counsel made no further comment.

Before this court, Stocks argues that the convictions alluded to by trial counsel after the state's closing argument became relevant when Harris denied having been convicted for alcohol-related driving offenses.[4] But because this argument was not presented to the trial court, it was waived.[5] Furthermore, as Stocks concedes, there was no attempt to introduce any such additional convictions. And colloquies between court and counsel do not constitute competent evidence of facts asserted therein.[6] Consequently, with no proffer of such additional convictions and no timely argument concerning their relevancy, we do not reach the question of whether evidence of the convictions should have been admitted.

Because there was no evidence introduced concerning the additional convictions, there was no error in disallowing argument concerning them.[7] And because there was evidence introduced concerning Harris's 14-year-old convictions, there was no error in allowing argument concerning them.[8]

3. Stocks contends that certain of the trial court's remarks "de-emphasized" to the jury the importance of Harris's convictions when it charged the jury on impeachment evidence. This contention is not supported by a fair reading of the record. The record reveals that after the court gave its final charge, Stocks excepted to the court's omission to charge on impeachment by evidence of prior felony convictions. The record further shows that the court then recalled the jury and gave the charge, prefacing it with, "I'm sorry. There's one thing I forgot. This is not any more important than anything else I said. Everything is equal and I don't — I'm not trying to emphasize this, I just forgot it." Contrary to Stocks's assertion, these remarks did not "de-emphasize" the importance of Harris's convictions.

---

[4] See generally *Williams v. State*, 257 Ga. 761, 762-763 (363 SE2d 535) (1988); compare *Hall v. Hall*, 261 Ga. 188 (402 SE2d 726) (1991) (holding evidence of DUI conviction is not admissible "for the purpose of general impeachment").

[5] *Smith v. State*, 237 Ga. App. 582, 585 (3) (516 SE2d 92) (1999).

[6] *Britt v. State*, 202 Ga. App. 689, 690 (1) (415 SE2d 492) (1992).

[7] See *Brown v. State*, 246 Ga. App. 517, 523 (9) (541 SE2d 112) (2000).

[8] See id.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 23, 2004 —
RECONSIDERATION DENIED JULY 7, 2004.

*James C. Wyatt,* for appellant.
*Leigh E. Patterson, District Attorney, Kay A. Wetherington, Assistant District Attorney,* for appellee.